## No. 1317.

### THE STATE EX REL. STERN'S FERTILIZER AND CHEMICAL MANUFACTURING COMPANY VS. CITY OF NEW ORLEANS ET AL.

The amendment of Article 207 of the Constitution of 1879 which exempts from taxation and license manufacturers of ice, fertilizers and chemicals, is not retroactive and does not exempt them from taxes and licenses due prior to the adoption of the amendment.

APPEAL from the Civil District Court, Parish of Orleans. *Rightor, J.*

---

*Gus. A. Breaux* for Relator and Appellee.

*W. H. Rogers, James Moise* and *W. B. Sommerville* for Respondents and Appellants.

---

The opinion of the Court was delivered by

McENERY, J. The City of New Orleans appeals from a judgment rendered against her, ordering the cancellation of the taxes and tax inscriptions in her favor and against Stern's Fertilizer and Chemical Manufacturing Company for the years 1880 to 1888, inclusive. The cause of action of the relator is based upon the amendment to Article 207 of the State Constitution adopted at the late general election, and officially promulgated May 12, 1888. Article 207 as it originally stood in the Constitution of 1879, exempted from taxation and license for ten years the capital, machinery and other property employed in the manufacture of textile fabrics, leather, shoes, harness, saddlery, hats, flour and agricultural implements.

The article as amended extends the exemption from the adoption of the Constitution of 1879 for a period of twenty years, and includes in the exemption manufacturers of ice, fertilizers and chemicals. The relator contends that the amended article exempts the articles which they manufacture from the period of the adoption of the Constitution

State ex rel. Stern's Manufacturing Company vs. City of New Orleans et al.

of 1879. The intention in the submission of the amendment to the people by the General Assembly, and its adoption by them was to re-enact Article 207, and to extend for a longer period the exemption from taxation and license the capital, machinery and other property employed in the manufacture of textile fabrics, leather, shoes, harness, hats, saddlery, flour and · agricultural implements, and to further amend the article by including in the list of exemptions manufacturers of ice, fertilizers and chemicals. The object and intention in the adoption of the amendment was to preserve the original article .as amended—to continue the exemptions and to extend the period from taxation and license, and to include other manufacturers of articles not found in the original article and which were not exempt from taxation and license. The intention was evidently to continue for an additional period manufacturers of articles already exempt, and to add others thereto, and the fixing of the period for all the articles manufactured, from taxation and the manufacturers from license from the adoption of the Constitution of 1879, was .to make the Article 207 as amended consistent and uniform.

The amended Article 207 is not retroactive. The Stern's Fertilizer and Manufacturing Company owe taxes, as shown by the record, for a period extending from 1880 to 1888 inclusive. It was not the intention in the adoption of the amendment to said article to exempt said company and its property from taxes due the city of New Orleans or the state, prior to the adoption of the amendment. No presumption or implication will justify such a conclusion. Had there been an intention to exempt from taxation and license the manufacturers of ice, fertilizers and chemicals, it would have been stated in unambiguous terms. There would have been some legislation to relieve those who were exempted by the article as amended and who had paid the tax and the license. It would be manifestly unjust to relieve those who had not paid, from their obligations to pay, and to have retained the amount of those who had promptly discharged their duty as citizens and paid their license and tax. Some provision would have been made to avoid this inequality and injustice, had it been the intention in the adoption of the amendment to make the amended article retroactive. We, therefore, conclude that Article 207 of the Constitution of 1879, as amended, exempts from taxation and license the manufacturers of ice, fertilizers and chemicals, only from the date of the promulgation, the 12th day of May, 1888, of the amendment to Article 207 of the Constitution of 1879.

It is, therefore, ordered that the judgment of the lower court be avoided and reversed and plaintiff's demand rejected with costs in both courts.

---

## ON APPLICATION FOR REHEARING.

The plaintiff, in the application for rehearing, says: "And this makes it certain that the purpose was as far as possible to place all manufactures named, on absolutely the same footing of exemption, not only for the period of extension, but for the entire period of twenty years from the adoption of the Constitution of 1879." Was it the intention in the re-enactment of the article to remit the taxes and licenses due by plaintiff prior to the 12th of May, 1888, and to retain to other manufacturers exempted by the amendment the amounts they had paid into the State treasury during the same period?

If so, language and terms would have been used to convey this intention. The manufacturers of certain articles exempted in the original article are also covered by the amended article, when they had already been exempted for a period of ten years. What then, was the object in exempting them in the amended article for a time for which they had already been exempted? It was evidently the intention to extend the period of their exemption by the simple method of re-enactment, and the plaintiff was included only as an amendment to said article, the period of exemption to commence only from the time the extension was given to the manufacturers originally exempted. There is no language in the article to convey the meaning that it was the intention to release plaintiff from taxes and licenses due, or to return taxes and licenses already paid into the State treasury.

In the case of Dennis, sheriff, vs. Railroad Co., this court quoted as follows from Fertilizing Company vs. Hyde Park, 97 U. S. Reports 666, in the construction of a legislative contract: "The rule of construction in this class of cases is that it shall be most strongly against the corporation. Every reasonable doubt is to be resolved adversely. Nothing is to be taken as conceded but what is given in unmistakable terms or by an implication equally clear. The affirmative must be shown. Silence is negative and doubt is fatal to the claim. The doctrine is vital to the public welfare. It is axiomated in the jurisprudence of this court."

In the case of Dennis, sheriff, vs. Railroad, it is stated that exemptions are granted either by general or special laws. When they are granted as a gratuity, as a bounty, they can be revoked at pleasure;

while, when they enter into and form part of a contract in the shape of a charter, they must continue in force as agreed upon. The rule of construction in both cases is the same as to meaning and scope. 34 Ann. 954.

By Act 113 of 1882, submitting an amendment to Article 146 of the Constitution, it was adopted and amended so as to exclude the officers of the Criminal District Court from a participation in the judicial expense fund.

Article 130, by an act passed at the same session of the General Assembly, was also amended at the general election of 1884. Suit was brought by the officers named in the amendment to Article 146 to restrain the treasurer from paying warrants *drawn* prior to the adoption of the amendments, claiming a preference out of the funds arising from the sale of stamps after the promulgation of the amendments. They assumed that Article 130 created a new and abolished the old Civil District Court; that the effect of the amendment to Article 146 was to establish an absolute preference on the judicial expense fund in favor of the officers of the new Civil District Court over the outstanding warrants in favor of the officers of the abolished court. In this suit, McGeehan vs. State Treasurer, 37 Ann. p. 156, this court said: "So far as the latter amendment (Art. 146) is concerned, we are clear that its only intention and effect were to relieve the fund from subjection to *future* criminal expenses.

" The stamp system, and judicial expense fund were established by Articles 145 and 146, and they continue to-day, the same system and the same fund, originally provided unaffected by the amendment to the latter article, except as to the changes *hereafter* affecting them. When this amendment was adopted the warrants then outstanding had a legal and valid right to be paid out of the accumulations of said funds in rotation of months and by preference over all warrants of later date."

No cunning of dialetics can evade the self-evident proposition that to give the amendment an interpretation destroying such vested rights would be to give it a retroactive effect.

It is presumed that the manufacturers not exempted by Article 207 prior to its amendment from taxation and license, have paid their licenses and taxes. To obtain restitution, a special act of the General Assembly would be required. Article 43. If it had been the intention to remit the taxes and licenses of plaintiffs and to return the licenses and taxes already paid into the treasury, the article would have made

it mandatory upon the General Assembly to enact the necessary legislation.

It would not have been left to the discretion of the legislative branch of the government; the State in its bounty would have left no doubt as to its interested generosity and munificence. If there be a doubt it is adversely construed.

Rehearing refused.