(92 South. 594)

No. 25001.

## STATE ex rel. W. K. HENDERSON IRON WORKS & SUPPLY CO. v. JETER, Tax Assessor.

(Feb. 27, 1922. On Rehearing, June 22, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Mandamus ⬿151(2)—Assessor only necessary party to proceeding to compel omission of exempt property.**

Under Act No. 170 of 1898, §§ 7 and 22, Act No. 211 of 1918, § 1, pars. 1, 2, and 11, Act No. 140 of 1916, § 14 et seq., and Act No. 231 of 1920, it is the duty of the assessor to change the assessment roll where property thereon becomes exempt after the rolls have been completed and notice to taxpayers given but before the tax becomes a charge against the property, and mandamus to compel such correction is properly brought against him without joining the State Tax Commission or the board of equalization.

2. **Taxation ⬿497—Mandamus lies to compel striking of exempt property from the rolls.**

A writ of mandamus will issue to require that exempt property be stricken from the assessment rolls.

3. **Mandamus ⬿3(9)—Remedy by injunction against tax on exempt property does not defeat remedy by mandamus.**

That one whose exempt property was placed on the assessment roll might have waited until the tax collector made an effort to enforce payment of the tax, and then proceeded by injunction, did not deprive it of its right to a writ of mandamus to require the striking of the property from the assessment rolls.

4. **Taxation ⬿219—Constitutional provision exempting debts means "debts" due to the taxpayer.**

Const. art. 10, § 4, exempting from taxation "debts" due for merchandise or other articles of commerce or for services, means debts due the taxpayer, and not debts due by him.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt.]

St. Paul, J., dissenting.

### On Rehearing.

5. **Taxation ⬿204(3)—Property exempted by Constitution held not exempt from taxes for year in which new Constitution adopted.**

Under Const. art. 10, § 4, exempting credits from taxation, article 22, par. 4, providing that taxes due, owing, or accruing shall not be affected except as therein otherwise provided, and paragraph 13, declaring the Constitution in effect on July 1, 1921, except as otherwise provided, and Act No. 170 of 1898, §§ 13 and 17, under which ad valorem taxes are levied for the calendar year, credits were not exempt from the taxes levied for the year 1921, as they were accruing, if not due and owing, when the Constitution took effect.

6. **Taxation ⬿204(2)—Doubts as to construction resolved against exemption.**

A doubt as to the construction of a constitutional provision exempting property from taxation should not be resolved in favor of, but against, the party claiming the exemption.

Dawkins and Overton, JJ., dissenting.

Appeal from First Judicial District Court, Parish of Caddo; E. P. Mills, Judge.

Mandamus by the State, on relation of the W. K. Henderson Iron Works & Supply Company, against John W. A. Jeter, Tax Assessor. From a judgment for the relator, defendant appeals. Judgment annulled, and relator's demand rejected on rehearing.

Phillips & O'Quin, of Shreveport (W. M. Phillips, of Shreveport, on application for rehearing), for appellant.

Pugh & Boatner, of Shreveport (White, Holloman & White, of Alexandria, amici curiæ), for appellee.

Harry P. Sneed and Edgar M. Cahn, both of New Orleans, amici curiæ, for Louisiana Tax Commission.

I. D. Moore, of New Orleans, amicus curiæ, for Board of Assessors, Parish of Orleans.

Ivy G. Kittredge, City Atty., and W. C. Jones, Asst. City Atty., both of New Orleans (W. E. Westerman, of New Orleans, of counsel), amici curiæ, for city of New Orleans.

By the WHOLE COURT.

OVERTON, J. The W. K. Henderson Iron Works & Supply Company instituted this suit against John W. A. Jeter, tax assessor for the parish of Caddo, praying for a writ of mandamus commanding him to strike from the assessment rolls for that parish, as null

and void, an assessment of accounts amounting to $173,590.

The petition sets forth that the accounts mentioned consist of debts due and owing plaintiff for merchandise, and for other articles of commerce and for services, and, in the words of the assessment, declares the accounts to be:

"Credits consisting of accounts and bills receivable, less a deduction 'for amount of accounts and bills payable, as of January 1, 1921, $173,590."

The petition then declares that plaintiff made due and seasonable demand on defendant to erase and cancel, as null and void, said assessment, on the ground that it is in contravention of section 4 of article 10 of the Constitution of 1921 of the state of Louisiana, as said accounts by that section are exempt from taxation, but that the assessor refused to cancel it; and that, unless said illegal assessment should be annulled and erased, the assessor will, in due course, complete the same by filing said rolls in the mortgage office and with the tax collector; and that the tax collector will proceed to enforce payment of the taxes based thereon.

Defendant answered, admitting that said debts due relator are for merchandise and other articles of commerce sold and for services rendered, and that they are listed and assessed, as set out in relator's petition, but defendant denies that they are exempt from taxation, and avers the validity of the assessment.

The case was then tried. In addition to the admitted facts already stated, the evidence shows that at the time of the trial the tax rolls had not been submitted to the Louisiana Tax Commission for review, nor filed with the tax collector or the recorder of mortgages. The evidence, however, shows that public notice, as required by law, had been given that the listing of all assessable property in the parish had been completed, and that the assessment rolls would be open for inspection and correction from and including June 11 to June 30, 1921. The evidence also shows that at the time of the filing of the suit, no authority had been received by the tax collector from the Louisiana Tax Commission to proceed with the collection of taxes for the year in question.

At the conclusion of the evidence the case was taken under advisement. While it was under advisement, defendant filed an exception of no cause of action. The trial resulted in judgment for the plaintiff, and defendant has appealed.

Under the exception, above mentioned, it is urged that a mandamus should not issue against the assessor alone to strike from the assessment rolls property listed for taxation, on the ground that it is exempt; at least, it is urged that such writ should not issue after the assessor has completed the rolls, and has given the notice required by law, advising the public that the listing of property has been completed, and that the list will be exposed for inspection and correction for a period of twenty days, beginning at the expiration of the 10 days' notice required. This is urged upon the ground that, at least, after the lapse of the period named for inspection and correction, the assessor alone is without authority to strike the property from the rolls as exempt, and may do so only with the concurrence of the board of equalization of his parish, and the Louisiana Tax Commission.

[1] Section 7 of Act 170 of 1898 makes it the duty of the assessor to place upon the assessment list all property in his parish that is subject to taxation. Paragraph 11 of section 1 of Act 211 of 1918 empowers the Louisiana Tax Commission to fix the time when the assessor shall conclude listing property and fixing values, and when he shall submit the assessments to the board of reviewers of his parish for review. Paragraphs 1 and 2 of the same section empower the Louisiana Tax Commission to assess, for state purposes,

all property subject to taxation in the state, and to fix and equalize the value of such property for purposes of state taxation, at not to exceed its actual cash value, leaving it to the local authorities, for local purposes, to assess such property at not less than 25 per cent. of the value fixed by said Commission as the basis for state taxation; such percentage to operate uniformly on all property subject to taxation throughout the parish. Paragraph 9 of the same section authorizes the Louisiana Tax Commission to require assessors to place on the rolls, at any time before filing them, property omitted therefrom. Section 22 of Act 170 of 1898 provides that immediately after the assessor has completed listing and estimating the value of property in his parish that he shall give 10 days' notice, by publication, that the rolls will be open for inspection and correction for 20 days, beginning at the expiration of said notice. Section 14 of Act 140 of 1916 provides for the giving of notice to the taxpayers that the rolls are open to inspection in respect to the values fixed by the Louisiana Tax Commission, after the assessor has forwarded the assessment rolls made by him, and reviewed by the board of reviewers, to that Commission, and they have been returned, and after he has extended on them the valuations for purposes of state taxation. This and the section following provide that when complaint is made by a taxpayer, in respect to the valuation of his property as fixed by the state Commission, after this second notice has been given, the complaint shall be disposed of before the board of reviewers, which board shall make such findings as it shall deem just and proper, and submit them to the Louisiana Tax Commission for approval or rejection. Act 231 of 1920 merely creates boards of equalization for the respective parishes, and authorizes such boards to examine the assessment of property as made by the assessors of their respective parishes; to equalize the assessments

within their parishes; to hear complaints from taxpayers; and to advise and assist the assessors in fixing the value of property.

The above is an outline of the statutory provisions of the duties of the assessors, of the boards of review and of equalization, and of the Louisiana Tax Commission, in so far as those duties may affect the point under consideration. From those statutory provisions it appears that the assessor is the official charged with the duty of listing the property for taxation; that, in discharging that duty, he should omit from the rolls all property not subject to taxation; that, after he has completed that work and valued the property and has given notice to that effect to the taxpayers, before submission of the rolls for review, and before the submission of them to the Louisiana Tax Commission, he is authorized, during the 20 days allowed for public inspection, to correct any error, upon complaint of any taxpayer, that may exist in them, not only as to the amount of the assessment, but also in respect to the listing of property.

These are his duties and powers, in those respects, when no change has been made in the law, pending the making of the assessment, and when a change, if one has been made, has not become operative so as to affect the assessment that is being made.

If, however, after the assessor has completed the rolls to the extent stated, and has given the notice mentioned, the law should be changed before the tax becomes a charge against the property that he, in conjunction with others, is assessing, so as to exempt some of the property from taxation that he has listed, which we find to be the case here, who would have the authority, and whose duty would it be, to make the change, and thereby carry out the mandate of the law? The answer would seem to be that it would be the duty of the assessor to do so, and that he has the requisite authority for that purpose, for each year it is his duty to list for

taxation such property as the law says shall be listed, and to omit such as the law says shall be omitted, and when, after listing the property, the law is so changed as to affect the listing made, it then becomes the duty of the assessor, as the official charged with making a correct list of property for assessment, in the first instance, to so revise the list as to make it conform to the new law. The taxpayer has the right to look to him to discharge that duty, and if he should refuse to discharge it by striking from the rolls property of the taxpayer that has been made exempt, the taxpayer may force him to do so by means of the writ of mandamus.

[2] That the writ of mandamus will issue, in a proper case, to enforce such a right appears from the following quotation from High on Extraordinary Remedies (3d Ed.) § 139-A, where it is said:

"* * * When certain lands are by law exempt from taxation, and it is made the duty of the Auditor General of the state to reject the taxes upon such lands, the duty being plain and unmistakable, its enforcement may be had by mandamus."

For the same reason, when it is the duty of the assessor to strike from the rolls, or to omit therefrom, property of a taxpayer that is exempt from taxation, the duty being plain, the right may be enforced in a similar way.

The writ of mandamus, to require that exempted property be stricken from the rolls, has been recognized as proper in this state, though the propriety of so using it was not in contest, as appears from the following decisions rendered by this court, in which the writ was issued: State ex rel. Da Ponte v. Board of Assessors et al., 35 La. Ann. 651; State ex rel. Administrators of Tulane Educational Fund v. Board of Assessors, 35 La. Ann. 669; State ex rel. Fredericks v. Board of Assessors, 41 La. Ann. 534, 6 South. 337; State ex rel. Gelpi & Bro. v. Board of Assessors et al., 46 La. Ann. 145, 15 South. 10, 49 Am. St. Rep. 318; State ex rel. Louisiana Improvement Co. v. Board of Assessors et al., 111 La. 982, 36 South. 91.

In resorting to the writ of mandamus for this purpose, it is not necessary that the Louisiana Tax Commission, or the board of equalization of the parish, or any other board, or officer, be made a party to the proceeding, for the assessor himself has the power, and it is his duty, as we have seen, to strike exempted property from the rolls, and there is no occasion or reason to make any other officer, or any one of the boards, a party to the suit. The power that the Louisiana Tax Commission has to order the assessor to place on the rolls property omitted therefrom does not make it a necessary party to a suit to strike from the rolls property exempt from taxation.

[3] It is also suggested that the relator, in this case, might have waited until the assessment was completed, and the rolls filed with the recorder of mortgages, and with the tax collector, and until the latter made an effort to enforce payment, and then proceed by injunction. That relator had such a remedy does not deprive him of his right to a writ of mandamus. He was not called upon to wait until then, or until the seizure of his property, and then enjoin. It was better, and less injurious, for him to proceed by applying for a writ of mandamus at once, rather than to permit matters to go that far, in order to avail himself of another remedy.

[4] It is urged that credits, accounts, and bills receivable are not exempt from taxation under the Constitution of 1921; and hence that relator's suit is without any basis on which to rest.

Section 4 of article 10 of that Constitution provides that "the following property, and no other, shall be exempt from taxation."

Then follows an enumeration of the property made exempt, among which is the following: "Debts due for merchandise or other articles of commerce, or for services."

It is urged that this provision of the Con-

stitution does not exempt accounts and bills receivable for merchandise sold and for services rendered, but only debts due therefor, and debts, it is urged, are directly opposite in meaning to accounts and bills receivable. It is, however, obvious that the framers of the Constitution by "debts," in the above provision, meant debts due the taxpayer, and not debts due by him. The framers of the Constitution, in providing for taxation, had in view the levy of taxes on those things that go to make up the wealth of a person, and not his poverty; and, in providing for exemptions from taxation, they were excepting certain of that wealth from taxation. They were not dealing with those things that go to make up one's poverty, in providing for the levy of taxes; and hence, there was no occasion to withdraw one's liabilities from taxation, in specifying the exemptions. The expression, therefore, "debts due for merchandise," etc., found in the above-quoted provision, can mean but one thing: Debts due the taxpayer, and not debts due by him.

Immediately prior to the adoption of the Constitution of 1921, such debts due the taxpayer were subject to taxation; and it is urged that, at the time the Constitution went into effect, the taxes for the year 1921 had become a charge on those debts, and that it was not contemplated that the constitutional provision exempting them should become operative until after 1921.

It is pointed out by defendant, in support of the above position, that the Constitution, after providing for the above exemption, also provides, in article 22, § 1, that—

"All * * * taxes * * * due, owing or accruing to the state of Louisiana, or to any parish * * * under the Constitution and laws heretofore in force * * * except as herein otherwise provided, shall continue and remain unaffected by the adoption of this Constitution."

And it is also pointed out, in support of that position, that the Constitution in the same section and article provides that—

"This Constitution, * * *, shall be in full force and effect on and after July 1, 1921, save and except as otherwise provided in and by this Constitution."

It is argued, from the above provisions, that it is clear, if taxes on credits, of the description mentioned, were due, owing, or accruing at the time the Constitution went into effect, that they were not affected thereby, because the Constitution provides that it (the Constitution) shall go into effect on July 1, 1921, save and except as otherwise provided therein; and as it is provided therein that taxes due, owing, or accruing shall not be affected thereby, and as these taxes were, at that time, accruing and owing, that therefore they remain unaffected for the year 1921.

This argument, however, overlooks the fact that the Constitution, in saving taxes due, owing, or accruing, expressly excepted, in this saving provision, those concerning which a contrary provision had been made by it. When we look to see what contrary provision had been made, we find, as above stated, that debts due for merchandise, and for other articles of commerce, and for services, which before had been subject to taxation, had been made exempt, and therefore they were not to be assessed thereafter, nor the assessment continued, if begun, but not completed. When we look to see when the exemption became effective, we find that it was on July 1, 1921, for the Constitution, by its terms, became effective on that date, except as otherwise provided therein, and we find nothing providing that the exemption mentioned should not become effective then.

On July 1, 1921, the date the exemption became effective, the assessment rolls had not been completed, nor could they possibly have been, for while, as appears from a resolution of the Board of State Affairs, now the Louisiana Tax Commission, passed under the authority vested in it by law, the time had arrived and passed for each assessor to send to the Commission abstracts of the rolls made

by him for the purpose of reviewing assessments of the various parishes and assessment districts throughout the state, and of fixing the actual cash value on all taxable property, yet after the completion of that work by the Tax Commission, it became necessary, as provided by section 14 of Act 140 of 1916, to expose the rolls for public inspection for 20 days. Before those 20 days could have possibly expired, even assuming that the rolls, or abstracts thereof, had been returned to the assessor on the date fixed by the Commission for forwarding them to it, the exemption became effective. From that time on, that is, the date from which the exemption became effective, the taxing machinery was arrested as to the property made exempt, and the assessment which was to form the basis of taxation, in so far as this property was concerned, could not be completed legally.

This inability to proceed further affected not only the completion of the assessment for state purposes, but likewise for local purposes, for under paragraph 1 of section 2 and under section 3 of Act 211 of 1918, the actual cash value of property, as fixed by the Louisiana Tax Commission, as a basis for state assessments, must form the basis for local assessments, and until that value is finally fixed by the state Commission, and an opportunity given the taxpayer to inspect the values thus fixed, and to complain before the board of review, the local assessment cannot be said to be completed to such an extent as to form the basis for taxation.

Cyc. in volume 37, p. 890, in this connection says:

"When a constitutional or statutory process exempting property from taxation goes into operation on a certain date in the year before the taxes for that year have been assessed, or before the date when by law they become a fixed charge on the property, the exempted property is free from taxation for the current year, but it is otherwise when the assessment is completed and the tax books closed before the date when the statute takes effect."

See, also, Gachet v. City of New Orleans, 52 La. Ann. 813, 27 South. 348.

As the answer of the defendant admits that the accounts and bills receivable are debts due relator for merchandise and other articles of commerce sold and for services rendered, there remains nothing to do but to hold that they are exempt for the year 1921, and that the writ of mandamus properly issued ordering the assessor to strike them from the rolls.

For the reasons assigned, the judgment appealed from is affirmed.

O'NIELL, J., is of the opinion that exemption did not become effective in 1921.

ST. PAUL, J. (dissenting). I respectfully dissent. I think that the taxes "due, owing or accruing to the state * * * under the Constitution and laws heretofore in force" which were to remain unaffected by the Constitution of 1921 (article 22, § 1) included all taxes *levied* for the year 1921; and I find nothing in the Constitution which provides otherwise. To my mind the plain meaning of the Constitution was that the existing tax system should remain undisturbed for the current year, and that the new system of taxation should go into effect only in the following year.

### On Rehearing.

O'NIELL, J. [5] A rehearing was granted in this case on the question whether section 4 of article 10 of the Constitution of 1921, exempting from taxation credits due for merchandise or articles of commerce and for services, had the effect of remitting the taxes that had been levied on such credits for the year 1921. On the original hearing, it was thought that the exemption did have the effect of releasing the credits from the taxes levied for the year 1921. The reason given for the ruling was that the tax assessments for that year were not completed, throughout the state, and therefore the taxes for

that year had not become a fixed charge on the credits before they were exempted, on the 1st day of July of that year, when the new Constitution, under certain reservations, went into effect.

The attorneys for the tax assessor direct our attention to the fact that, although the taxes that had been levied for the year commencing on the 1st of January, 1921, were not *due* or *owing* on the 1st of July, of that year, they were *accruing*, and had been *accruing* for exactly half of the annual period. Hence it is said that the taxes for that year were included in the constitutional reservation of "all taxes due, owing *or accruing*" when the new Constitution was adopted.

The various stages in the process of assessing property for taxes are described in the original opinion rendered in this case, and they need not be described again. It is sufficient to say that the listing and valuation of the property on which taxes had been levied for the year 1921 were done by the assessors before July of that year. The assessments were not complete or final—and the taxes therefore had not become a fixed charge on the property assessed—because the assessments were yet subject to review, revision and correction. But the taxes that had been levied for the year 1921 were *accruing* during all of the first half of the year, because they had been *levied* upon all property that was subject to taxation at the beginning and during the first half of the year. We must bear in mind that the new Constitution does not say that credits shall be exempt from assessment for taxes. It says that credits "shall be exempt from taxation." And we must not confuse the power of *taxation* with the process of *assessment*. The power of *taxation* was exercised when the taxes for 1921 were *levied*, notwithstanding the process of *assessment* had not been completed when the constitutional convention declared "debts due for merchandise or other articles of commerce or for services *shall be*

*exempt from taxation.*" The declaration was, not that the debts or credits should not be listed or assessed for taxes, but that taxes should not thereafter be levied upon credits. The taxes that had already been levied were then *accruing*. The only question to be decided, therefore, is whether the taxes that had been levied upon credits, for the year 1921, and that were *accruing* when the constitutional convention declared that credits should be exempted from *taxation*, were reserved to the state, and to the municipalities, parishes, and taxing districts.

In determining when any substantive provision of the Constitution went into effect, we are governed by the schedule, which is article 22; because that article deals especially and only with the subject of the time or date when each and all of the substantive provisions of the new Constitution went into effect.

The purpose of the schedule was, as its preamble says, to carry the Constitution into complete operation without any inconvenience arising therefrom. The thirteenth paragraph of the schedule says that the Constitution went into full force and effect on the 1st day of July, 1921, save and except as otherwise provided in and by the Constitution. The proviso, of course, refers especially to the reservations made in the preceding twelve paragraphs of the schedule. The fourth paragraph is the one that relates to taxes that were "due, owing or accruing" when the Constitution, in other respects, went into effect. The proviso, or reservation, is in this language:

"Fourth. All * * * taxes, * * * due, owing or accruing to the state of Louisiana, or to any parish, city, municipality, board, or other public corporation, * * * except as herein otherwise provided, shall continue and remain unaffected by the adoption of this Constitution."

It is not disputed that the taxes that had been levied for the year 1921, on all property that was subject to taxation at the be-

ginning of the year, including credits due for merchandise or articles of commerce and for services, were "accruing" when the new Constitution went into effect; that is, on the 1st of July, 1921. Therefore, the taxes that had been levied upon credits, for the year 1921, were not remitted, but were expressly reserved to the state and to each municipality, parish and taxing district, unless the reservation was stultified by the proviso, "except as herein otherwise provided." The attorneys for the plaintiff herein, and the attorneys for several other taxpayers who have appeared as amici curiæ, contend that it was "otherwise provided," with regard to taxes on credits, by the article which exempts them from future taxation. They refer to section 4 of article 10, enumerating all property that "shall be exempt from taxation." The argument would be sound if section 4 of article 10 declared, in terms, that the exemption should be retroactive in effect, so as to remit the taxes that had already been levied, for 1921, upon the credits that were then and theretofore subject to taxation but thereafter exempt from taxation. But section 4 of article 10 did not say when the exemptions from taxation, therein enumerated, should go into effect. That is the question to be decided now.

The fallacy of the argument of the learned counsel for the plaintiff—we say with great respect—is in their major premise. They start out by taking for their premise a conclusion of fact, upon the very question that is at issue; and then, by pursuing their argument in a circle, by a begging of the question—petitio principii, as the logicians call it—they come back, of course, to their original conclusion. The method of reasoning goes something like this: The question is: When did the exemption granted by section 4 of article 10 go into effect? Of course, if section 4 of article 10 said when the exemption went into effect, that would be the end of the question. But section 4 of article 10 does not say when

the exemption went into effect. Therefore resort must be had to the schedule of the Constitution to see when the exemption granted by section 4 of article 10 went into effect. And there it is found that the Constitution itself went into effect on the 1st of July, 1921, except that the taxes then due or owing or accruing to the state or to any parish or municipality or other subdivision of the state were not affected by the adoption of the Constitution, "except as otherwise provided." Then the learned counsel say that it is "otherwise provided" in section 4 of article 10, in the statement that credits due for merchandise or articles of commerce or for services "shall be exempt from taxation." But it is not so "otherwise provided" in section 4 of article 10 in the statement that credits "shall be exempt from taxation," because that statement is not in conflict with the proviso in the schedule, that the taxes due, owing or accruing when the Constitution was adopted should not be affected by its adoption.

The members of the constitutional convention knew that all taxes for the year 1921 had been levied before the beginning of the calendar year, and that the taxes for that year were actually "accruing" when the new Constitution was about to be adopted. They knew, too, that the state's appropriations for 1921 had been made in the session of the Legislature of 1920, and that the budgets of expenditures for all of the parishes and municipalities, for the year 1921, had been made and published at or before the beginning of the year. The members of the convention also knew that the state's appropriations for 1921, and the municipal and parochial budgets of expenditures for that year, had been made on the basis of revenues to be derived from the taxes that had already been levied, upon all of the property that was subject to taxation at the beginning of the year 1921. The members of the convention also had in mind that the new Constitution

151 La.—33

would exempt from taxation property that was not theretofore exempt, and might therefore upset all calculations that had been made in the state's appropriations for the year 1921, and in the budgets that had been made and published by the municipal and parochial authorities throughout the state. To avoid upsetting the state's appropriations, and the municipal and parochial budgets of expenditures, for the year 1921, the members of the convention said, in the schedule of the new Constitution:

"This Constitution * * * shall be in full force and effect on and after July 1, 1921," but, in order "that no inconvenience may arise from the adoption of this Constitution, * * * all * * * taxes, * * * due, owing or accruing to the state of Louisiana, or to any parish, city, municipality, board, or other public corporation, * * * shall continue and remain unaffected by the adoption of this Constitution."

The reservation of taxes "accruing to the state," etc., would not have served any purpose whatever if it did not apply to taxes levied upon property that would thereafter— except for the reservation—be exempt from taxation. Surely, there was no reason for saying that the taxes that had been levied on property that would not be exempted from taxation by the adoption of the new Constitution should "continue and remain unaffected by the adoption of this Constitution."

The proviso in the fourth paragraph of the schedule, "except as herein otherwise provided," does not necessarily mean, or even imply, that it was elsewhere "otherwise provided" with regard to taxes that had been levied and were "accruing" when the new Constitution was adopted. Manifestly, the proviso was inserted merely to avoid any possible conflict with any special provision, elsewhere, on the subject. The proviso refers as well to any other of the obligations mentioned in the fourth paragraph of the schedule as to "taxes due, owing or accruing." The entire paragraph reads thus:

"All recognizances, obligations and all other instruments, entered into or executed before the adoption of this Constitution, to the state, or to any parish, city, municipality, board, or other public corporation therein, and all fines, taxes, penalties, forfeitures and rights, due, owing or accruing to the state of Louisiana, or to any parish, city, municipality, board, or other public corporation therein under the Constitution and laws heretofore in force, and all writs, prosecutions, actions, and proceedings, except as herein otherwise provided, shall continue and remain unaffected by the adoption of this Constitution. All indictments and informations which shall have been found or filed, or may hereafter be found or filed for any crime or offense committed before the adoption of this Constitution, may be prosecuted as if no change had been made, except as herein otherwise provided."

We must bear in mind, ad valorem taxes are levied always for the calendar year, commencing on the 1st day of January and ending on the 31st day of December. See sections 13 and 17 of Act 170 of 1898 (the revenue law that was in force when the new Constitution was adopted). See, also, Home Insurance Co. v. Board of Assessors, 48 La. Ann. 451, 19 South. 280; Southern Insurance Co. v. Board of Assessors, 49 La. Ann. 401, 21 South. 913; Palfrey v. Connely, Tax Collector, 106 La. 699, 31 South. 148. It is certain that the exemptions from taxation, of the various classes of property enumerated in section 4 of article 10, were not intended to go into effect in the middle of the year, so as to leave the property subject to the taxes that had been previously levied and were accruing during the first half of the year, and exempt the property from taxation for the last half of the year. The question, therefore, is, not whether the exemptions from taxation went into effect on the 1st of July, 1921, but whether they had a retroactive effect, as of date the 31st of December, 1920, at midnight. There is not the slightest intimation in the schedule of the new Constitution that any of its provisions should have a retroactive effect, as of date the 31st of December, 1920, at midnight. And the language of sec-

tion 4 of article 10, viz. "the following property, and no other, shall be exempt from taxation," forbids the idea that the exemption was intended to be retroactive in its effect.

[6] Considering that the learned counsel for plaintiff made such a plausible argument on the original hearing of this case that they convinced a majority of the members of the court that the tax exemptions granted in section 4 of article 10 of the new Constitution did have a retroactive effect, it must be conceded that the proviso in the fourth paragraph of the schedule, "except as herein otherwise provided," did cast a doubt upon the meaning of the reservation in that paragraph, reserving "all taxes due, owing or accruing," when the Constitution was adopted. The rule of construction, in such case, is that the doubt should not be resolved in favor of, but against, the party who claims the exemption. Carre v. City of New Orleans, 41 La. Ann. 996, 6 South. 893; City of New Orleans v. Robira, 42 La. Ann. 1098, 8 South. 402, 11 L. R. A. 141; Ivens & Sons Machine Co. v. Parker, Tax Collector, 42 La. Ann. 1103, 8 South. 399; Carre v. City of New Orleans, 42 La. Ann. 1119, 8 South. 399; Gast v. Board of Assessors, 43 La. Ann. 1104, 10 South. 184; Succession of Parham, 51 La. Ann. 980, 25 South. 947, 26 South. 700. In the case last mentioned, this court, quoting Wade on Retroactive Laws, §§ 33, 34, and 35, said, with regard to a constitutional exemption or remission of taxes:

"One of the cardinal rules by which courts are governed in interpreting statutes is, they must be construed as prospective in every instance, except when the legislative intent that they shall act retrospectively is expressed in clear and unambiguous terms, or such intent is necessarily implied. * * *

"Every reasonable doubt as to the intention of the lawmaker is resolved *against*, rather than in favor of, the retrospective operation of the statute. * * *

"This principle is not only applicable to legislative acts, but to state Constitutions, and, in fine, to all written law. Being a rule of construction, it may be applied to every conceivable expression of the will of the lawmaking power where there is a doubt whether it was intended to take effect prospectively or retrospectively."

The attorneys for the plaintiff in this case cite and rely upon the rulings in Stern's Fertilizer Co. v. City of New Orleans, 40 La. Ann. 697, 4 South. 891; Louisiana & N. O. Ice Co. v. Parker, Tax Collector, 42 La. Ann. 669, 7 South. 898; Gachet v. City of New Orleans, 52 La. Ann. 813, 27 South. 348; and the general rule stated in 37 Cyc. 890, viz.:

"When a constitutional or statutory provision exempting property from taxation goes into operation on a certain day in the year, before the taxes for that year have been assessed, or before the day when by law they become a fixed charge on the property, the exempted property is free from the taxes for the current year; but it is otherwise when the assessment is completed and the tax books closed before the day when the statute takes effect."

The general rule, stated above, which is in accord with the decisions cited, would be applicable to the case before us if the schedule in the new Constitution did not contain the reservation of all taxes due, owing or accruing, when the Constitution was adopted. In fact, the rule stated might be applicable to this case if the reservation in the schedule of the new Constitution had reserved only the taxes that were actually due and owing when the Constitution was adopted; because the expression, "taxes due and owing," might be construed to include only taxes that had become a fixed charge on the property. But, to say that the expression, "taxes due, owing or accruing," refers only to taxes that have become a fixed charge, would do violence to the English language. It would be the same as to strike out the word "accruing."

In Gachet v. City of New Orleans, 52 La. Ann. 813, 27 South. 348, the city had bought a lot for a site for an engine house, on the 6th of July, 1885, and constructed the engine house on the lot. The lot was thereafter sold for the taxes of 1885, assessed in the name of the man who had owned it at the

beginning of that year. The purchaser at the tax sale sold the lot to Gachet, and he brought suit against the city for the lot. The court held that the tax sale was null because the taxes for which it had been sold were not "due" or "demandable" or "delinquent" when the title passed from private to public ownership. The court recognized that the taxes were "accruing"—that there was a "developing liability"—when the city bought the lot, on the 6th of July; but the court was not then dealing with a constitutional or statutory reservation of the state's right to collect taxes that were merely "accruing." It was said:

"The moment public ownership of the lot attached—the moment it passed from the hands of Hoxie to the city—developing liability to taxation was arrested, and in point of fact and law the state taxes for 1885 on the lot, under the assessment made in the name of the estate of McConnell, Hoxie's vendor, never reached the point of maturity. The tax never became due nor delinquent, and the lot could not be sold for taxes until delinquency had ensued."

But the case now before us does not depend upon whether the taxes in contest had "reached the point of maturity," or had "become due or delinquent," when the new Constitution was adopted. The language of the reservation in the schedule, reserving "all taxes due, owing or accruing" when the Constitution was adopted, makes no distinction between the taxes that were due or owing and those that were only "accruing" when the Constitution was adopted. And we have no authority to make the distinction, or to say that the taxes that were "accruing" when the new Constitution was adopted were not reserved because they were not "due" or "owing," or because they had not, as in the Gachet Case, "reached the point of maturity," or "become due or delinquent." To decide this case according to the ruling in Gachet's Case would be, virtually, to rewrite the reservation in the fourth paragraph of the schedule of the Constitution, omitting the word

"accruing." The reservation was not so written; and we cannot read it so.

Our conclusion is that the exemption of credits from taxation, as granted by section 4 of article 10 of the Constitution of 1921, did not have the effect of releasing or remitting the taxes that had been levied upon such property for that year, and that were accruing when the Constitution was adopted.

The defendant, tax assessor, in his answer to this suit, demands the statutory penalty of 10 per cent. said to be imposed by section 56 of Act 170 of 1898, p. 373, for the attorney's fee. It may be that the attorney for the tax collector is entitled to the fee; but that is a matter which the relator, tax debtor, must settle with the tax collector, who is not a party to this proceeding. We are not asked to give judgment for the taxes in contest; and our decree will not affect the question of liability for the tax collector's attorney's fee.

The judgment appealed from is annulled, and relator's demand is rejected, at relator's cost.

DAWKINS, J., dissents, adhering to the original opinion.

OVERTON, J., dissents, and adheres to original opinion.