(110 So. 78)

No. 25983.

**MISSOURI PAC. R. CO. v. GRANT, Sheriff and Tax Collector, et al.**

(Oct. 5, 1926.)

*(Syllabus by Editorial Staff.)*

Counties ⬤➾190(2)—Constitutional withdrawal from exemption of parish taxation and permitting increase in maximum rate held inapplicable to taxes of 1921, in view of saving clause (Const. 1921, art. 12, § 15, article 14, §§ 7, 8, 11, article 22, § 1, subds. 4, 13; Act No. 47 of 1900, § 36; Const. 1913, as amended according to Act Nos. 191 and 218 of 1918).

Const. 1921, art. 14, §§ 7, 8, 11, article 12, § 15, withdrawing exemption under Act No. 47 of 1900, § 36, from parish taxation of property and permitting an increase in maximum rate of parish taxes, under Const. 1913, as amended according to Act Nos. 191 and 218 of 1918, is rendered inapplicable to all taxes for 1921 by saving clause of article 22, § 1, subds. 4, 13.

Appeal from Sixth Judicial District Court, Parish of Ouachita; Fred M. Odom, Judge.

Suit for injunction by the Missouri Pacific Railroad Company against T. A. Grant, Sheriff and Tax Collector, and others. Judgment for plaintiff, and defendants appeal. Affirmed.

J. B. Dawkins, of Monroe, for appellants.

Hudson, Potts, Bernstein & Sholars, of Monroe, for appellee.

O'NIELL, C. J. The Missouri Pacific Railroad Company owns property in the parish of Ouachita, a part of it being in the city of Monroe. All property in Monroe was, by a provision in the city charter, exempt from parochial taxation. See section 36 of Act 47 of 1900, p. 76. The rate of parish taxation for governmental purposes generally was, by the Constitution of 1913, as amended according to Act 191 of 1918, limited to 5 mills on the dollar, of which 1½ mills was, by law, allocated to the support of the public schools of the parish. By another constitutional amendment adopted in 1918, pursuant to Act 218 of that year, the police jury of each parish had to levy an additional tax of 1½ mills for the support of the public schools of the parish. Therefore, before the adoption of the Constitution of 1921, all property in the city of Monroe was free from parochial taxation, and all property elsewhere in the parish of Ouachita was subject to a parish tax of 6½ mills, of which 3 mills was appropriated to the support of the public schools, leaving 3½ mills for the general expenses of the government of the parish.

On the 11th of August, 1920, the police jury, by Ordinance No. 774, made a budget of expenditures covering all of the avails of the parish taxes for the year 1921, and, by the same ordinance, declared that the sources of revenue to meet the budget of expenditures should be the general tax of 5 mills, the additional school tax of 1½ mills, and the various special taxes enumerated, the avails of all of which taxes were estimated in the ordinance at exactly the amount of the budget of expenditures.

The Constitution of 1921, in section 11 of article 14, limited the rate of parochial taxes to 4 mills for governmental purposes, and, in section 15 of article 12, allowed an additional parish tax of 3 mills for the support of the public schools of the parish. The result was to increase the maximum rate of parish taxes for the general expenses of the parish government from 3½ mills to 4 mills, besides the 3 mills already allowed for the support of the public schools, and thus to increase the total rate of parochial taxes from 6½ to 7 mills for all expenses of the government of the parish, including the support of the public schools.

The Constitution of 1921, in sections 7 and 8 of article 14 withdrew the exemption from parish taxation of property in the city of Monroe, and allowed the police jury to levy a parish tax not exceeding one-half of the rate

levied on the property situated elsewhere in the parish for the general expenses of the parish government.

The police jury of Ouachita parish did not levy the parish taxes for 1921 to meet the budget that was adopted on the 11th of August, 1920, until the 12th of October, 1921. On that day, an ordinance was adopted levying a tax of 2 mills on the property in the city of Monroe and 4 mills on the property situated elsewhere in the parish, for the general expenses of the parish government, and an additional tax of 3 mills on the property outside of Monroe, for the support of the public schools.

The 2-mill tax on the railroad company's property in Monroe which was theretofore exempt from parish taxation amounted to $4,966.24, and the additional half-mill tax on the company's property elsewhere in the parish amounted to $526.98.

Having paid all other taxes levied against its property for the year 1921, the railroad company brought this injunction proceeding against the police jury, the tax collector, and the assessor to prevent the collection of the 2-mill tax on the property in Monroe and the additional half-mill tax on the company's property elsewhere in the parish, and to annul these taxes and cancel the assessments to that extent. The contention of the plaintiff was, first, that the withdrawal of the exemption from parish taxation of property in the city of Monroe, and the authority conferred on the police jury to levy 4 instead of 3½ mills taxes for governmental purposes, besides the 3-mill school tax, did not go into effect until the end of the year 1921; and, second, that the 2-mill tax levied on the property in Monroe and the additional half-mill tax levied on the property elsewhere in the parish were not based upon a budget of expenditures. There was judgment for the plaintiff, and the defendants appealed.

The judgment is in accord with the opinion which we rendered in State ex rel. Henderson Iron Works & Supply Co. v. Jeter, Tax Assessor, 151 La. 1011, 92 So. 594, and in Oden, Tax Collector, v. Industrial Lumber Co., 153 La. 734, 96 So. 549. In those cases we had to construe the provisions of the Schedule, being article 22, of the Constitution of 1921, declaring when the provisions of the Constitution should go into effect, and we decided that the meaning of the Schedule was that the tax system and rates theretofore prevailing should remain undisturbed until the end of the calendar year 1921. Our ruling, specifically, was that the exemption of certain credits from taxation, in section 4 of article 10 of the Constitution, did not take effect until the end of the year 1921.

In the thirteenth paragraph of the Schedule of the Constitution of 1921 it was declared:

"This Constitution * * * shall be in full force and effect on and after July 1, 1921, save and except as otherwise provided in and by this Constitution."

In the fourth paragraph of the Schedule, one of the exceptions to the provision that the Constitution should go into effect on the 1st of July, 1921, was declared to be that all taxes due, owing or accruing to the state, or to any parish, municipality or other public corporation, should continue and remain unaffected by the adoption of the new Constitution. In the two cases cited we held that all parish taxes levied, or to be levied, for the calendar year 1921 were accruing when the new Constitution was adopted; that the state's appropriations for that year, made by the Legislature in 1920, and the estimates and budgets of expenditures made by the parishes and municipalities throughout the state, were based upon the estimates of revenues to be derived from the tax system prevailing when the appropriations and estimates and budgets of expenditures were made. And we held that it was for that obvious reason that the Constitutional Convention intended

that the taxes for the year in which the new Constitution was adopted should remain unaffected by its being adopted in the middle of the year. The judgment appealed from is therefore correct.

The judgment is affirmed.