## STATE v. LOUISIANA BAKING CORPORATION.

### No. 14723.

Court of Appeal of Louisiana. Orleans.

Feb. 26, 1934.

Chas. J. Rivet, of New Orleans, for appellant.

Spencer, Gidiere, Phelps & Dunbar and Louis B. Claverie, all of New Orleans, for appellee.

HIGGINS, Judge.

The state of Louisiana, through its tax collector for the city of New Orleans, claims license taxes for the years 1931, 1932, and 1933 from the defendant, which is engaged in the business of manufacturing cakes, on its business of (a) selling confections at retail, and (b) operating a restaurant.

The defendant admits that it is engaged in business as a manufacturer and sells at retail stale and broken cakes which would otherwise be a total loss, but contends that this practice is a mere incident of its manufacturing business, which is exempt from the payment of a license tax; and, in the alternative, in the event the court should hold that it is engaged in the retail business, that it should be classified under the section of the statute dealing with retail businesses generally and not under the section controlling the retail sale of confections. Defendant also admits that it operated a restaurant on its premises, but pleads that, since this was done only as a convenience for its employees, without any hope or desire for profit or remuneration, it was not engaged in the restaurant business within the meaning of the statute.

There was judgment dismissing the rule, and plaintiff has appealed.

The Louisiana Baking Corporation is engaged in the business of manufacturing cakes in the city of New Orleans. Its gross sales covering the period in question amounted to more than $350,000 per year. It sold its products to the groceries and restaurants for the purpose of serving retail purchasers. To keep the retail merchants supplied with fresh cakes, defendant placed code marks thereon indicating the date they were delivered, and, if the retailer was unsuccessful in disposing of them in a few days, defendant collected the stale cakes and credited the retailer's account therefor. The returned cakes, as well as defectively manufactured and damaged cakes, were sold by defendant from a small room in the yard of its premises for about one-third to one-fifth the retail sale price of fresh goods, and were usually purchased by the poor people living in the neighborhood of the bakery.

The gross receipts from the sale of the stale

and defective cakes was $5,095.38 for the year 1930, $6,474.75 for 1931, and $3,943.10 for 1932.

 While it may be true that defendant was pursuing the best method for the disposal or salvaging of the stale and defective cakes, which would otherwise become a total loss, we do not believe that the retail sales thereof, amounting to substantial sums, can be said to be a mere incident to its manufacturing business. There is no doubt that the defendant is retailing the class of merchandise in·question, and we find no provision in the law exempting the business of selling at retail because the merchandise is secondhand, or damaged, or because no direct profit is made thereby.

The exemption from taxation is an exceptional privilege, which must be clearly, unequivocally, and affirmatively established. State v. Jeter, 151 La. 1011, 92 So. 594; Pearce v. Couvillon, 164 La. 155, 113 So. 801; Penick & Ford v. Ehret, 166 La. 1, 116 So. 572; Guffey Pet. Co. v. Murrel, 127 La. 466, 53 So. 705; State ex rel. Acme Products Co. v. Moss, 160 La. 724, 107 So. 505. We conclude that defendant is subject to a license tax for pursuing this line of business.

Defendant has referred us to the case of Ballard, Ex Officio Tax Collector v. Kentwood Ice Mfg. & Bottling Works, 147 La. 583, 85 So. 598, 599, where the state claimed a license tax from the defendant for carrying on the business of a retail merchant selling ice, meal, lard, butter, bacon, ham, ice cream, milk cans, and other articles during the year of 1919. In deciding the case the Supreme Court said: "The milk cans sold by defendant were few in number, and were sold only to customers to deliver milk in to defendant. Such sales were mere incidents of the business; and defendant cannot be held to have been engaged in retailing milk cans."

We do not believe that case to be in point here, because we find as a fact that the retail sales of the defective and stale cakes were substantial. Furthermore, in the above referred to case the milk cans were only sold to customers so that they could deliver milk in them to the defendant. In the instant case the sales were not confined to defendant's regular customers as an incident of the manufacturing business, but were made to the general public.

 The next question is: Under what section of the revenue law should the business of defendant be classified? The state contends that defendant comes under the provisions of section 21 of Act No. 205 of 1924, which deals with the sale of confections, and defendant's counsel argues that it comes under section 8 of Act No. 205 of 1924 covering retail businesses generally.

Section 13 of Act No. 171, p. 415, of 1898, which was a license tax statute, provides:

" * ·* * Persons, association of persons or business firms and corporations engaged in the sale of soda water, mead, confections, cakes, etc., exclusively shall be rated as follows: * * *

"Third Class—When the gross sales are six thousand dollars or more, and under eight thousand dollars, the license shall be thirty dollars, $30.

"Fourth Class—When the gross sales are four thousand dollars or more, and under six thousand dollars, the license shall be twenty dollars, $20.

"Fifth Class—When the gross sales are three thousand dollars, or more, and under four thousand dollars, the license shall be fifteen dollars, $15."

This language is identical with that used in section 11 of the general license laws enacted by the General Assembly of 1881, 1886, and 1890, designated as Acts Nos. 4, 101, and 150, respectively. The language was also retained in Act No. 133 of 1902, amending Act No. 171 of 1898. In 1920, however, when the next general license statute was enacted by the Legislature, the word "cakes" was eliminated entirely from the classification of confections in section 22 of Act No. 233 of 1920, which reads as follows:

" * * * That all persons, associations of persons, firms and corporations engaged in the sale of soda water, ice cream, confections, soda pop, coca cola, chero-cola, grapico or other similar soft drinks or beverages or refreshments, shall pay license based on the gross annual sales, and such licenses are hereby fixed and graded as follows, to-wit: * * *

"Thirteenth Class—When the gross sales are six thousand dollars or more, and less than eight thousand dollars, the license shall be thirty dollars ($30).

"Fourteenth Class—When the gross sales are four thousand dollars or more, and less than six thousand dollars, the license shall be twenty-five dollars ($25).

"Fifteenth Class—When the gross sales are three thousand dollars or more, and less than four thousand dollars, the license shall be twenty dollars ($20)."

The language used in section 21 of Act No. 205 of 1924, which is the present general license law under which the state seeks to collect a license tax from·the defendant, is

substantially the same as that used in section 22 of Act No. 233 of 1920. It is possible that the elimination of the word "cakes" from the classification "confections" was an error or oversight on the part of the framers of the law, but, when we consider that this word has been omitted from both the statute of 1920 and that of 1924, we are forced to conclude that its omission was intentional on the part of the legislators. It is therefore, our opinion that the retail sale of cakes does not come within section 21 of Act No. 205 of 1924, but under section 8 thereof, which deals with retail businesses generally. Under that section defendant is liable for license taxes for the years 1931 and 1932 in the sum of $10 each, and for the year 1933, $5, a total of $25, with interest and penalties.

■ Is the defendant engaged in the restaurant business? It appears that the defendant employed a woman for the purpose of preparing meals for its 75 employees. She worked from 6 o'clock in the morning until 1 o'clock in the afternoon. While a few bakers, who worked at night, ate their breakfast at the plant, the main meal was served at noon. There is testimony to the effect that it always has been the custom of bakeries to feed their employees. It appears that there was no available restaurant in close proximity to defendant's plant. Defendant's employees are required, on account of the excessive heat in the bakery, to be scantily attired, and their clothing is soiled by the icing, flour, etc., handled by them, making it inconvenient to go out for meals. The defendant furnished the flour, sugar, butter, lard, shortening, salt, pepper, vinegar, and all sorts of canned fruits to the restaurant, without any charge therefor. It was only necessary to purchase vegetables and meats in the preparation of the meals. The plate lunches were sold at a maximum of 10 cents to each employee. No profit was hoped for or desired, nor was any made, and the restaurant was operated practically at cost to the employees with the exception of the forementioned foodstuffs furnished gratis by the defendant.

Section 19 of Act No. 205 of 1924, dealing with the subject under discussion, reads as follows: "For every business of restaurant * * * a separate license shall be paid, and such license shall be fixed and graded as provided in Section 8 of this Act for retail dealers."

The term "business," as used in the license tax law of this state, has been defined by the Supreme Court in the Case of State of Louisiana v. Boston Club et al., 45 La. Ann. 585, 12 So. 895, 20 L. R. A. 185, as follows:

"In order to support their contention that they are not indebted at all for a license they argue that they are not engaged in trade, and do not follow a business. The definition of 'business' by the lexicographers is sufficiently broad and comprehensive to embrace every employment or occupation, and all matters that engage a person's attention or require his care, without the least regard to trade or business.

"The meaning of the legislators as expressed in the statutes is not as extensive. 'Business,' in a legislative sense, is that which occupies the time, attention, and labor of men for purposes of livelihood or for profit; a calling for the purpose of a livelihood.

"We will follow the latter meaning in interpreting the statutes relating to license tax."

The Court of Appeals for the District of Columbia, in the case of Deering v. Blair, 57 App. D. C. 367, 23 F.(2d) 975, 976, said: "An occupation or employment will not be excluded from the classification of business merely because it actually results in loss instead of profit; but it is essential that livelihood or profit be at least one of the purposes for which the employment is pursued, in order to bring it within the accepted definition of the word, and this applies to farming as well as other employments. Plant v. Walsh (D. C.) 280 F. 722; Thacher v. Lowe (D. C.) 288 F. 994."

Bouvier's Law Dictionary (Students' Ed. 1928), defines "business" as follows: "That which occupies the time, attention, and labor of men for the purpose of livelihood or profit, but it is not necessary that it should be the sole occupation or employment."

The evidence in this case convinces us that the defendant operated the restaurant as a mere convenience to its employees because of the fact that there was no suitable eating establishment in the vicinity of its plant and because their duties required them to be dressed in a manner which would not be appropriate in public. There was no intention or hope on the part of defendant to make any profit from that undertaking. The meals were served without the expectancy of receiving any profit from the operation of this department, and therefore we conclude that defendant is not engaged in the restaurant business within the meaning of the statute.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be amended by making the rule absolute in favor of the state of Louisiana and against the defendant, Louisiana Baking Corporation, condemning it to pay to the state

of Louisiana a license tax on its retail cake business for 1931, $10, for 1932, $10, and for 1933, $5, together with 2 per cent. interest per month on each of the said sums from March 1st of each respective year that it became delinquent, until paid, and 10 per cent. additional as attorney's fees on both principal and interest, with recognition and maintenance of the lien and privilege of the state upon all of the property of the defendant, both movable and immovable, securing the payment of the said amounts, and enjoining the defendant from further pursuit of said business until after having properly obtained the licenses from the state by paying the respective amounts due for each of the years 1931, 1932, and 1933.

In all other respects the judgment appealed from is affirmed; defendant to pay the costs of both courts.

Judgment amended in part. Judgment affirmed in part.