DEWEY *v.* NIAGARA FIRE INS. CO.

(No. 783697—Decided January 22, 1968.)

Common Pleas Court of Cuyahoga County.

*Messrs. Jones, Day, Cockley & Reavis* and *Mr. Edward P. Troxell,* for plaintiffs.
*Messrs. Ulmer, Berne, Laronge, Glickman & Curtis* and *Mr. Marvin L. Karp,* for defendant.

CRAMER, J. Plaintiffs' action is one wherein they seek to recover upon a policy of insurance issued to them

by the defendant herein insuring them against the loss or theft of unscheduled personal property belonging to the plaintiffs. They to recover for the loss sustained by them as a result of theft of certain clothing, photographic and projection equipment, cameras, projectors, tape recorders, speakers, sound reproducing equipment, suitcase, film and negatives.

Certain facts which are not disputed are as follows:

While plaintiffs were in Detroit, Mich., February 23, 1962, certain of their personal property was stolen from them. The property so stolen is set forth in plaintiffs' exhibits 4 and 5. The cost thereof to plaintiffs was the sum of $9,159. The defendant issued an insurance policy to plaintiffs which covered their unscheduled property but excluded from coverage "business property away from the premises." The premiums on the policy were duly paid.

The defendant concedes liability under the policy only for the loss of certain of such personal property such as Mr. Dewey's suitcase, two blue suits and one paid of slacks, the total value of which as shown by exhibit 4 being $125.

It is the claim of the defendant that all of the remaining items admittedly stolen from plaintiffs in Detroit on February 23, 1962, constituted "business property away from the premises," and, therefore, were excluded from coverage under the terms of the policy which appear under Coverage C—Unscheduled Personal Property.

Plaintiffs, in their brief, set forth the issues which are for this court's determination which arise by virtue of the pleadings and the evidence, the court having heard the case without the intervention of a jury.

Such issues being:

(1)  What is the meaning of the word "business" as used in the insurance policy?

(2) Were the travelogue lecturing activities of the plaintiffs a business activity within the meaning of the policy on February 23, 1962?

(3)  Was such activity avocational and not a source of livelihood and, therefore, not a business?

(4) Was the use of the word "business" in the policy an ambiguity rendering parol or extrinsic explanation permissible?

(5) Is the defendant estopped by waiver from disclaiming responsibility to plaintiffs by reason of their reliance on representation of the defendant's general agent, that the policy protected their property used in travelogue lecturing away from plaintiffs' premises?

Briefly stated, the evidence shows that Mr. Dewey had retired as an employee of Joseph and Feiss Company in 1960. However, he continued to perform some work for that employer which did not by any means consume all of his time. In other words, such employment after 1960 was on a part-time basis. In 1961 and 1962 Mr. Dewey had twelve lectures which he gave to clubs, fraternal organizations, churches and lay organizations. The evidence is susceptible of the conclusion that he spent perhaps as much as six months of each year in filming trips and lecturing activities and spent three or four months a year away from his home lecturing. The greater portion of the lectures were outside of the Greater Cleveland area. At the time of the loss of their property the plaintiffs were in Detroit, Michigan, where Mr. Dewey was giving a series of lectures to Rotary and Kiwanis Clubs. The income tax returns of Mr. Dewey showed that he sustained a net loss of approximately $8,000 in 1961 and $12,000 in 1962, though he received substantial gross fees from his lectures. It also appears that his gross fees during the years 1961 and 1962 exceeded by almost 25 per cent Mr. Dewey's income from Joseph and Feiss Company (which income was derived from both stock dividends and salary). His gross fees for the year 1961 totaled $15,300 and in 1962 he received $10,700 in such fees.

Mr. Dewey expended sums for advertising in magazines that he was available for lectures and had employed an agent in Chicago who was paid a commission by him whenever she obtained a lecture for him.

It also appears that an appreciable amount for depreciation in the value of the equipment in question was taken

by this plaintiff in his income tax return which accounted in some measure for the loss he sustained in connection with his lectures. The equipment which was stolen was used by plaintiffs at their home on occasions in showing films to entertain the friends of plaintiffs. It further appears that in his income tax return Mr. Dewey gave as his occupation that of a "motion picture producer and lecturer."

Plaintiffs in their brief have cited many, many cases wherein the courts have defined the word "business." We have read and considered quite a number of such cited cases, some of which follow:

*Easterbrook* v. *Hebrew Ladies Orphan Society* (1912), 82 A. 561, Supreme Court of Errors of Conn.

This case involved a restrictive covenant of a deed which specifies certain prohibited businesses by name, and concludes "any other trade or business, dangerous or offensive to the neighboring inhabitants," are also prohibited. The defendant proposed to use the property for a home for orphans and aged persons or a charitable and benevolent undertaking with no intent to derive a profit from its operation.

Paragraph 1—In its opinion the court defined the word "business" as follows citing cases:

"It is used broadly to signify 'that which busies or engages time, attention, or labor as a principal serious concern or interest.' * * * In this sense it embraces everything about which one can be employed. * * * It is often used in a much narrower sense to denote 'that which occupies the time, attention, and labor of men for the purpose of livelihood or profit.' * * * In this sense it signifies 'a calling for the purpose of livelihood or profit.' * * *"

*Allen* v. *Commonwealth* (1905), 188 Mass. 59, 74 N. E. 287, Supreme Judicial Court of Massachusetts. By statute it was provided that any person owning an established business on land in the town of West Boylston, should be compensated for any loss of business, resulting from the destruction of the village of Oakdale, which was destroyed by the construction of a reservoir. The plaintiff was a farm-

er who had a route to sell his surplus farm produce in the village of Oakdale, which was destroyed by the construction of a revervoir. The court held that he was engaged in a business within the contemplation of the statute setting out in its opinion:

"The word 'business' is of large significance, and 'denotes the employment or occupation in which a person is engaged to procure a living' " * * *

*American Radiator Co.* v. *Franzen* (1927), 81 Colo. 161, 254 P. 160, Supreme Court of Colorado. Workmen's compensation case wherein a manufacturer hired a window cleaning company to clean the plant's windows. While doing so one of the window cleaners was injured. The question to be answered was whether such window cleaner was an employee of the manufacturer.

In answering this question in the negative the court stated:

"The business of a person, as the word is here used, is that calling which he pursues for livelihood or gain. Webster. Washing windows is not a part of the business of manufacturing and selling * * *."

*Braxton* v. *City of Selma* (1918), 16 Ala. App. 476, 79 So. 150, Court of Appeals of Alabama. A case involving the violation of a city ordinance which provided for the licensing of businesses, occupations, professions, trades and exhibitions in the city. The defendant, an employee of a railway company, hired others to assist him, however, such act was not normal to his employment. For this act without a license he was arrested and convicted under the ordinance.

In reversing the conviction the court construed the term "business" as used in the ordinance as meaning "that employment which occupies the time, attention, and labor of the person engaged, for the purpose of a livelihood or profit. It is his calling for the purpose of a livelihood."

The following cases appear in footnote 9, page 3 of plaintiffs' brief:

*In re Lamont* (1935), 41 P. 2d 497, Supreme Court of

Wyoming. A workmen's compensation case wherein a painter was employed by the hour to complete whatever painting that was to be done in the Emory Hotel. Claim was made for workmen's compensation by the painter when he was injured from a fall from a ladder while so employed. It is contended that the injury is not compensable as it falls within the exception clause providing no compensation for

"a person whose employment is purely casual and not for the purpose of the employer's trade or business."

The court held that the painter was not covered by Workmen's Compensation, and quoted from *Marsh* v. *Grover*, 258 Pa. 473, 478, which stated:

"There are few words more current in our speech than the word 'business'; few that include a greater variety of subjects and yet none which, in popular speech, have greater or more marked singleness in denotement. When one's business is the subject of common speech, no one can be in doubt as to the reference. It would be a very exceptional person * * * who would not understand that the reference is to the habitual or regular occupation that the party was engaged in with a view to winning a livelihood or some gain."

*Gray* v. *Board of Commissioners* (1917), 101 Kansas 195, 165 P. 867, Supreme Court of Kansas. Workmen's Compensation case involving a county, the question being whether the county was engaged in a trade or business subject to the law. The court held that the county was not engaged in a trade or business so as to be subject to workmen's compensation. In so doing it defined "business" as being

"synonymous with 'calling,' 'occupation,' or 'trade,' and defined as 'any particular occupation or employment engaged in for a livelihood or gain.' * * *"

*Kaplan* v. *Gaskill* (1922), 108 Neb. 455, 187 N. W. 943, Supreme Court of Nebraska. Workmen's Compensation case wherein the employer conducted a junk business and dealt in second hand automobiles. He also owned "two or three houses and a small store building," which were rent-

ed out. The defendant employed the injured party to do certain repair work and remodelling on the store building, repair the fence, build some garages, etc. In so doing, the employee ran a splinter into his finger which resulted in a permanent injury.

The issues of the case were whether or not the employment was "casual" and whether or not it was an employment in the usual course of "the trade, business, profession or occupation" of the employer, as contemplated under the statute.

In holding that the defendant was engaged in a trade or business of renting houses the court stated that

"The act does not contemplate that a person can be enaged in only one regular business. He may be engaged in several."

The court then cited from the case of *Marsh* v. *Grover*, 258 Pa. 473, 102 A. 127 as follows:

"* * * What we have said as to the popular understanding of the word 'business' is just what Webster defines it: 'Some particular occupation or employment habitually engaged in for livelihood or gain.' "

*Marsh* v. *Grover* (1917), 258 Pa. 473, 102 A. 127, Supreme Court of Pennsylvania. Workmen's Compensation case wherein the defendant was in the process of enlarging and remodelling her dwelling, and while so doing hired the plaintiff to do some plastering work which would require only a few days. The plaintiff, while engaged in the work, fell to the ground, and injured himself. The law provided that the plaintiff must show that his injury was received while engaged in the regular course of the business of his employer.

The court held here that the plaintiff was engaged in casual employment thus could not recover under the Workmen's Compensation law. In so doing, the court defined "business" just as Webster defines it as:

"Some particular occupation or employment habitually engaged in for livelihood or gain."

*Pitts* v. *Maupin* (1935), 88 S. W. 2d 384, Kansas City Court of Appeals, Missouri.

The defendant here conducted a seed business in town and also a farm. He contracted with one Grover Shawson to cut lumber for him for the construction of a corn crib. One of Shawson's men was injured in the course of cutting the lumber, and suit under Workmen's Compensation Act against both Maupin and Shawson. Judgment in trial court against Shawson but in favor of Maupin.

The court here affirmed the trial court holding that there was an absence of evidence showing that Maupin here was engaged in a lumber business. Thus, the cutting and sawing of lumber was not in the course of his usual business as is required under the statute.

However, the court did point out that

"A person may have more than one kind of business, within the meaning of the statute."

Here, Maupin was engaged in two businesses, one a seed business, the other a farm. He was not engaged in a lumber business, however. The term "business" was again defined as "any particular occupation or employment habitually engaged in, especially for livelihood or gain." (See Webster's New International Dictionary.)

*State* v. *Louisiana Baking Corp.* (1934), 153 So. 41, Court of Appeals of Louisiana (appearing on page 4).

The case here involved the license tax statutes of the state of Louisiana. The question involved whether the defendant was engaged in the restaurant business. The defendant conducted a business of manufacturing cakes and confections and distributed same to retail outlet. Because of the working conditions, the fact that the employees had to be scantily attired due to the heat, and got so soiled due to the ingredients used in the process of manufacturing, the defendant employed a woman to prepare meals for his employees. He had such meals prepared and served at cost, with no expectation of a profit and no profit was made.

The court again defined "business" as "that which occupies the time, attention, and labor of men for purposes of livelihood or for profit; a calling for the purpose of a livelihood." Here, the restaurant was conducted for the "mere convenience to its employees," with no hope or in-

tention for profit, thus the defendant was not engaged in the restaurant business within the meaning of the statute.

*Hutchings* v. *Burnet* (1932), 58 F. 2d 514, Court of Appeals of District of Columbia.

Internal Revenue case which involved certain deductions taken by the taxpayer on her income tax return. The taxpayer deducted certain attorney fees which were paid for services involving (a) a will contest, (b) in a suit contesting her title to certain property, and (c) preparation of her income tax return. These deductions were disallowed by the Commissioner of Internal Revenue.

The court here affirmed the disallowance of the above deductions holding that such payments were not part of any trade or business carried on by the taxpayer, but were only personal in nature. Under the Revenue Code only "ordinary or necessary expenses in carrying on trade or business" are deductible. The court defined "business" as has already been defined in the above-cited cases.

*Deering* v. *Blair* (1928), 23 F. 2d 975, Court of Appeals of District of Columbia.

Another Internal Revenue case wherein the taxpayer was conducting a stock farm in Rhode Island and deducting the expenses on his income tax return, from his gross income. He resided in New York, and occupied most of his time there with "various financial affairs." The Commissioner of Internal Revenue disallowed the deduction taken for conducting the stock farm. This court affirmed the decision holding that from the evidence the farm was being conducted as a "place of pleasure, exhibition, and social diversion, and not as a business for profit."

This decision was brought about by the fact that in 1919 the expenses amounted to $27,260.81 and income amounted to $2,285.53. They then reasoned that at this rate the operating losses must have extinguished the original invested capital, demonstrating that the farm was not being conducted for a business purpose for "livelihood or income."

*Chaloner* v. *Helvering* (1934), 69 F. 2d 571, Court of Appeals of the District of Columbia.

In this case the taxpayer, who was indpendently weal-

thy, had indulged in the hobby of writing books without realizing income therefrom. He deducted expense of his secretary and other expenses from his income tax return, which the commission disallowed.

In affirming the decision to disallow the expenses the court cited the rule:

"An occupation or employment will not be excluded from the classification of business merely because it actually results in loss instead of profit; but it is essential that livelihood or profit be at least one of the purposes for which the employment is pursued."

Here, the taxpayer, from the evidence, did not conduct a business for profit. Through the years in question he published only one book and has realized practically nothing from the sale of books.

The defendant in answer to the "definition of 'business'" argument advanced by plaintiffs has likewise cited a number of cases for our consideration. They follow:

*Essary* v. *Hartford Accident and Indemnity Co.* (1965), 346 F. 2d 61.

This was an action by an injured party against an insurer of a truck driver who caused the injury. The plaintiff recovered a judmgent against the insured, but upon execution no property could be found to satisfy the judgment. Suit was then instituted against the insurance company.

The insurance company raised as a defense, an exclusion in the policy, that "the policy does not apply * * * to a non-owned automobile while used * * * (2) in any other business or occupation of the insured except a private passenger automobile operated or occupied by the named insured. * * * " Here the insured was driving a truck of another, and the injured party was riding on the back, and fell when the truck suddenly started forward.

The court concluded that as the insured expected a return "favor," for driving the truck in question, even though he was to receive no money for performing the service rendered, he was within the above exclusion. The insured was in the same stead as a handyman, doing any

work he could secure for a living, in return for money or other services.

The court used, as a definition of "business" "a particular subject of labor or attention; a temporary or special occupation or concern." Webster's New International Dictionary (2d ed. 1961).

*Voelker* v. *The Travelers Indemnity Co.* (1958), 260 F. 2d 275, 7th Circuit Court of Appeals.

Action for a declaratory judgment, praying for a determination that the insured was covered by a policy of insurance, and that the insurance company should take over the defense of a suit resulting from an automobile accident.

The accident occurred while the insured was driving a truck for the Illinois National Guard. In the course of employment he struck another auto, and was sued. Under the terms of the policy the insured was covered if driving his auto or "any other automobile." However, there was an exclusion provided wherein the policy of insurance did not apply to "any automobile owned by or furnished for regular use" to the named insured, or to any automobile "while used in a business or occupation of the named insured, except a private passenger automobile."

The court held that the insurance policy did not cover the defendant, as he was engaged in a business as a member of the National Guard. This was so even though he was engaged in other employment upon which he depended for his livelihood. The court stated "a person during the same period can be engaged in more than one business." Such was plaintiff's situation.

*Seaford* v. *Nationwide Mutual Insurance Co.* (1961), 117 S. E. 2d 733, Supreme Court of North Carolina (appearing on page 8).

Action for declaratory judgment. The plaintiff had a policy of insurance with the defendant company, which contained an exclusion so that the policy did not apply to non-owned automobiles while used in the automobile business of the insured or in any other business or occupation of the insured except a private passenger automobile operated or occupied by the insured.

The plaintiff here was employed to operate a tractor-trailer unit for one trip, that his occupation was that of a textile worker, thus he contends he was not engaged in his "business or occupation" within the meaning of the policy.

The court felt contra and cited the case of *Allstate Ins. Co. v. Hoffman*, 21 Ill. App. 2d 314, where the court stated:

"It is not uncommon for an insured to have a business in addition to his regular and customary occupation which he may pursue primarily or even wholly for purposes other than pecuniary gain; but such collateral business would nonetheless constitute a business or an occupation while so pursued. * * *"

*Swanstrom v. Insurance Co. of North America* (1951), 100 F. Supp. 374.

In this case the insured-plaintiff purchased from the defendant-insurance company a personal property floater policy to insure unscheduled personal property. There was an exclusion under the policy excluding from coverage property pertaining to a business, profession, or occupation.

The plaintiff collected objects of art and antiques and had placed them in a restaurant, owned by the plaintiff, for decoration and adornment purposes. It was stipulated that the property in question, which was subsequently destroyed by a fire, was unscheduled property as referred to in the policy, that it was in the restaurant for decoration, and the restaurant was the business of the plaintiff. Thus the question involved was whether the property was excluded by the terms of the policy.

The court held that the property was excluded by the terms of the policy stating that when the property was placed in the restaurant "the character of the risk was changed." The exclusion was aimed at excluding this sort of use of the property, thus the loss suffered by the plaintiff arose out of a risk pertaining to the business of operating a restaurant.

The court found further that there was no ambiguity in the contract as to the term "pertaining to a business," that where no ambiguity exists the court cannot create one.

"The ambiguity rule does not require the court to give a policy a strained and unnatural construction. 'The words of a contract are to be understood in their ordinary and popular sense. * * *' ''

It is to be seen that the outcome of a number of cases cited by both parties herein were determined as a result of considering the use to which the property in question was put. It is true, of course, that the use to which property is or may be put is of prime importance in deciding the character thereof.

We must not lose sight of the fact that in the instant case *"business property* away from the premises" is excluded from coverage. That means, construing the phrase strictly against the defendant herein, that the property in question must be "business property" even when not away from the premises. That is, the property's removal from the premises does not have the effect of converting it into business property by its use when so removed.

However, the considerable evidence which was introduced showing the manner in which and the extent to which this property was used must weigh heavily in arriving at a conclusion as to its character.

What constitutes "business property" is a question of law. Whether it is "business property" under the definition is a question of fact. See *Cherot* v. *U. S. Fidelity and Guaranty Company,* 264 F. 2d 767.

We cannot escape the conclusion, arrived at as a result of the preponderance of the evidence here, that applying the definition of "business" gleaned from the cases, the property, for the theft of which a recovery is sought, was "business property" and since the property (except items of clothing) admittedly was away from the premises when the theft occurred it was excluded from coverage.

The word "business," descriptive of the property excluded from coverage when away from the insureds' premises must be given the meaning that "common speech imports." We have come to such conclusion bearing in mind the rule that insurance provisions are to be construed in favor of the insured but that such rule is to be invoked

only where there exists rational grounds for construction of the policy. We believe no such grounds exist here.

We believe that the plaintiffs' position is that of seeking to have the court construe the facts of this case strongly against the defendant when such rule applies only to the language of the contract. In our opinion, the language of the contract gives rise to no ambiguity.

In support of plaintiffs' claim that the defendant is estopped from asserting that the policy does not apply to the loss sustained by plaintiffs, reliance is placed upon the conduct and statements of defendant's general agent as shown by the testimony of such agent and Mr. Dewey, most of which was proffered (objection thereto having been sustained).

Even if we should now overrule the objection thereto, though having previously sustained the same, and admit such evidence, which we now feel we should do and consider such evidence as being before us, still it is our opinion that no estoppel or waiver as recognized in law has been shown.

The authorities, cited and those our independent research have produced, support, we believe, the claim the defendant makes that no estoppel has been made out because:

(1) "The doctrine cannot be utilized to extend the coverage of an insurance policy," and

(2) "There can be no estoppel or waiver if the insurance company or defendant's agent does not have knowledge of the pertinent facts."

The annotation found in 1 A. L. R. 3d at page 1144 under Section 2 entitled "Summary and Discussion" and (a) Generally:

"While waiver and estoppel have been held applicable to nearly every area in which an insurer may deny liability, the courts of most jurisdictions agree that these concepts are not available to broaden the coverage of a policy so as to protect the insured against risks not included therein or expressly excluded therefrom. The theory underlying this rule seems to be that the company should

not be required by waiver and estoppel to pay a loss for which it charged no premium, and the principle has been announced in scores of cases involving almost every conceivable type of policy or coverage provision thereof.

"The contrary view, however, is represented in the decisions from some jurisdictions, primarily California, Idaho, South Dakota, and Virginia, while other courts have evaded the general rule by 'construing' the clause in question to be one which does not relate to the coverage afforded by the policy but merely states a condition the breach of which will result in a waivable forfeiture. Some cases have also sought to distinguish between waiver and estoppel, holding that the latter may have the effect of expanding coverage while the former may not.

"* * * (b) Editorial comment.

"At least some of the disagreement from one jurisdiction to another in this area of law may be attributed to the improper use of the terms 'waiver' and 'estoppel.' Taking the generally accepted definitions of the two doctrines, it is obvious that an insurance company should not be held incapable of the 'intentional relinquishment of a known right' or of 'inducing an ignorant party into a deleterious change of position' simply because a question of coverage is involved, and that courts making the blanket statement that waiver and estoppel are not available must have in mind the perhaps too liberal meaning accorded those terms when they are used to prevent the insurer from escaping an otherwise binding liability because of some minor technicality or oversight on the insured's part. In the same manner, courts taking the position that waiver and estoppel are generally available to broader coverage are no doubt referring to the traditional definition of the terms, since there is little reason why an insured should be permitted to take advantage of a similar minor oversight on the company's part to obtain free coverage.

"Assuming then that an insured who was able to bring himself within the traditional definitions of waiver and estoppel would recover regardless of the coverage expansion question, and that one who could make only the show-

ing necessary to avoid an oversight or technicality would not, the pertinent inquiry is whether there are other circumstances which will justify a departure from the literal terms of the agreement between the parties, where the effect of such departure will be to afford the insured additional coverage."

The annotation proceeds to refer to cases in every jurisdiction in support of the general rule (that waiver and estoppel are not available to bring within the coverage of an insurance policy risks not covered by its terms or expressly excluded therefrom), and the relatively few jurisdictions that have reached a different result. Ohio cases following that general rule are *Zechar* v. *All American Casualty Co.*, 116 Ohio App. 41 and *Ayers* v. *Kidney*, 333 F. 2d 812.

The defense of "business use" we feel applies equally to Mrs. Dewey even though she was a co-owner of the property stolen. And she herself did not use it in connection with any business activity. This for the reason that it was the property that was insured and if it was "business property" it was excluded from coverage when away from the premises and ownership under such circumstances would not be material.

In addition, the evidence shows that Mrs. Dewey permitted the use of such property and even participated in its use in the giving of travel lectures and travelogues and reaped some benefits therefrom.

It is our conclusion that the travelogue lecturing activities of the plaintiffs constituted a business activity within the meaning of the policy on February 23, 1962, and that the property stolen—with the exception of items of clothing—was "business property" and away from the premises. It is further our conclusion that the defendant is not estopped by waiver from disclaiming responsibility to plaintiffs under the policy.

We find, therefore, that the plaintiffs are entitled to recover the sum of $125—being the admitted value of the personal items of clothing together with interest thereon from February 23, 1962, and their costs herein expended. An entry may be prepared in accordance with this opinion.