150 N.J. Super. 246 (1977)
375 A.2d 315
F. RICHARD TELL, PLAINTIFF,
v.
CAMBRIDGE MUTUAL FIRE INSURANCE COMPANY, DEFENDANT.
Superior Court of New Jersey, District Court  Union County.
May 11, 1977.
*248 Mr. Thomas A. Shepard Jr., for plaintiff.
Mr. Joel N. Werbel for defendant (Messrs. Methfessel & Werbel, attorneys).
BEGLIN, J.D.C.
Defendant insured plaintiff and his wife under its homeowner's policy, which afforded coverage for unscheduled personal property "usual or incidental to the occupancy of the premises as a dwelling" while on the described premises, and also "such unscheduled personal property while elsewhere than on the described premises" when "owned or used by" the insured. However, coverage was excluded for "business property while away from the described premises."[1] The term "business" was defined to mean "a trade, profession or occupation."
On November 20, 1974 plaintiff was employed as a carpenter by a corporation solely owned by his father, and drove to the job site in Union County directly from his residence in Hunterdon County, utilizing his own station wagon. Stored in the rear of the vehicle under a cover were five boxes containing plumbing and sheet metal tools, power saws and a large assortment of nails, screws and pieces of hardware. Plaintiff removed some carpentry tools from an open box and took them to the site, returning once during the day to get some tape. Upon entering the vehicle at the end of the work day he discovered a window vent open and the boxes missing. Plaintiff testified that all of the tools and supplies, including the plumbing and sheet metal items, had been purchased by him over the years for *249 his personal use, some specifically in connection with improvements made by him at his present and former residences.
Plaintiff's occupation for some 20 years had been as a carpenter, not always being in the employ of his father. Occasionally he did some work for his brothers, and his brothers would also borrow the power saws and tool boxes. He testified that his employer provided "just about everything" by way of power tools and supplies, although as is customary in the carpentry trade, plaintiff furnished and used some of his own hand tools, admitting a preference due to familiarity, size, weight, fit or similar factors. In his daily activities plaintiff did not use the power saws or the plumbing or sheet metal tools. Occasionally he would use his own nails, screws and other materials, as this was more convenient than stopping work and driving to a local lumber yard or supply house. When such occurred, the items would be replaced by his employer.
Normally, the tools and boxes (with exception of the open box of carpentry hand tools) were kept at plaintiff's home, but these items had been in his vehicle since picked up at a brother's home a month or two before the loss. At the time of the loss the only tools at home were some duplicate hand tools and mechanical tools for working on motor vehicles.
The question is whether in these circumstances the tools and other items constitute "business property" under the terms of the policy exclusion. The research of counsel and the court has not produced any case in this jurisdiction or elsewhere squarely in point.
It is basic that the language of insurance policies is to be liberally construed in favor of the insured, and if two meanings may fairly be supported thereby, an interpretation favoring coverage is to be applied. Further, exclusionary clauses are to be given a strict interpretation. However, these established rules of construction are not to be applied in disregard of exclusionary language which has *250 clear import and intent. Courts will not rewrite a policy to provide better or different coverage than the insured purchased. Last v. West American Ins. Co., 139 N.J. Super. 456 (App. Div. 1976), and cases cited therein at 459.
* * * [P]rovisions in a policy describing the property insured must be construed with reference to the nature of the property, the purpose for which it is ordinarily used, and the manner in which it is ordinarily kept. * * * Obviously, however, not all property owned by an insured engaged in business will be excluded by such a provision. Rather, it is the ownership of the insured plus the necessary connection with the business which excludes the property from coverage. And where the connection with the insured's business is insufficient, coverage will be found. [4 Appleman, Insurance Law and Practice §§ 2992, 2303 at 247, 291 (1969)]
The provisions of defendant's policy clearly indicate that all of the items lost would have been covered had the loss occurred on the insured's premises. Swigert v. American Bankers Ins. Co., 247 So.2d 737 (Fla. D. Ct. App. 1971), cert. den. 252 So.2d 797 (Sup. Ct. 1971). But it is apparent that the intent was to exclude such property if it fairly could be characterized as being used away from his residence in furtherance of the insured's trade or occupation. The function of the Court in construing an insurance policy
"Is to search broadly for the probable common intent of the parties in an effort to find a reasonable meaning in keeping with the expressed general purposes of the policy." [Flynn v. Hartford Fire Ins. Co., 146 N.J. Super. 484 (App. Div. 1977)].
Here, many of the items lost had been stored in plaintiff's vehicle for a considerable period of time, but as his wife had another car, plaintiff's station wagon did not have to serve the needs of the family. Most of these items had been acquired for personal, not business purposes. Although capable of occasional usage by a carpenter such as plaintiff, these items generally are not classified as carpenter's tools, and were not ordinarily used or necessarily kept by plaintiff *251 for furtherance of his trade. Other items, however, are clearly included in what a carpenter regularly uses, and were transported to the job site daily by plaintiff to be used by him in some instances or at least to be available if his carpentry work so required.[2]
In Swanstrom v. Ins. Co. of N. America, 100 F. Supp. 374 (S.D. Cal. 1951), the insured, for purposes of decoration and adornment, placed objects of art and antiques in a restaurant he owned and operated. The policy excluded unscheduled personalty pertaining to a business of the insured. In holding that the loss was not covered by the policy, the court found the policy intended to exclude "just this sort of use of the property," as the loss arose out of a risk pertaining to operating the restaurant business. "It is the character of the use not the nature of the property that is determinative of the coverage or exclusion." Id. at 375. Similarly, in Dewey v. Niagara Fire Ins. Co., 16 Ohio Misc. 297, 242 N.E.2d 692 (C.P. Pleas 1968), the manner and extent of the property's usage determined its business character and excluded coverage. There, the insured suffered a theft loss of photographic and sound equipment utilized both in personal pursuits and in his part-time, income-producing travelogue lecturing activities. The exclusionary policy language, "business property away from the premises," was found to mean, when construed strictly against the insurer, that the property must be "business property" even when not away from the premises. That is, the removal of the property from the premises does not have the effect of converting it into business property by its use when so removed. Id. at 699.
Other jurisdictions have utilized such an analysis. Riddle v. Allstate Ins. Co., 203 So.2d 820 (La. Ct. App. 1967), *252 determined that personal articles such as a radio, clock, lamp, desk set, books and framed pictures did not become business property when the insured, a clothing store manager, placed them in his office to supplement other furnishings provided by the employer. In Jerrel v. Hartford Fire Ins. Co., 251 Iowa 816, 103 N.W.2d 83 (1960), film used in the insured's former business was stored in his present business office, but its presence there did not pertain to his then business and its loss was therefore not excluded from coverage. In Gulf Ins. Co. v. Olson, 469 S.W.2d 715 (Tex. Civ. App. 1971), after terminating a short-lived franchise business, the insured stored items related to that business in his home garage, one month later suffering a fire loss. The homeowner's policy afforded only limited coverage if the property pertained to a business. In upholding a jury finding that the policy limitation did not apply, the court looked to the character of the use, not the nature of the property. A similar result occurred in Warren v. Farmers Alliance Mut. Ins. Co., 31 Colo. App. 292, 501 P.2d 135 (App. Ct. 1972).
Plaintiff relies on Singer v. National Fire Ins. Co. of Hartford, 110 N.J. Super. 59 (Law Div. 1970), where art objects were stolen from the automobile of the insured, an interior decorator who had removed the pieces from her permanent home collection to demonstrate how their presence improved the appearance of a bank board room she had recently redecorated. In finding the objects were not property "pertaining to a business" and therefore not excluded from coverage, the court observed that a past business motive or a possible future business motive is not enough to covert property from being "personal" to the insured.
[A]lthough there might have been a "concurrent potential business motive in plaintiff's mind, at the time the property was stolen it was personal property, kept as part of the plaintiff's personal art collection, and not "pertaining" to business within the contemplation of the policy. [at 63]
*253 Here the policy language is clear and unambiguous. The lost property, by its very nature, could be classified as property used by one in a trade or occupation. Such, however, is not determinative. More important is the use to which these articles were put by this insured, and the extent to which that usage was usual or incidental to his "business" of being a carpenter or his "personal" occupancy of the insured dwelling. The risk insured against was theft of personal articles away from the insured premises, not articles utilized or available for easy utilization in daily carpentry activities. Accordingly, with the exception of those tools noted above which were in the vehicle to be available and used in connection with plaintiff's carpentry work, plaintiff has proven by the preponderance of credible evidence that the balance of the items stolen do not fall within the policy exclusion and have a replacement value, including tax, of $1032.89.
Defendant urges that plaintiff misrepresented material facts concerning the loss and is thereby precluded from any recovery. There is no independent proof of fraud, false swearing, willful concealment or misrepresentation which would bring into effect the governing clause of the policy, and the items lost were of sufficiently mixed character and usage that inclusion of all in the claim, without more, would not constitute conduct barring recovery.
The policy requires institution of suit within 12 months of the loss. Here, the loss occurred on November 20, 1974, and suit was filed June 1, 1976. During that interval both plaintiff and his attorney corresponded with the adjusting companies representing defendant, with the agency issuing the policy, and with defendant's home office. Although the adjuster denied coverage in its first letter of January 3, 1975, it subsequently requested and received additional information as to its "assumption" that the items stolen were used by plaintiff in performing his trade. The submission of that was not met with any further response or denial until a proof of loss statement was forwarded by *254 another adjuster and rejected by plaintiff on September 3, 1975.
In these circumstances the correspondence between the parties and the conduct of the defendant during the nine-month period of January 3 to September 3, 1975, effectively tolled the running of the policy limitation period and suit was accordingly timely filed. Peloso v. Hartford Fire Ins. Co., 56 N.J. 514 (1970); Friedman v. Friendly Ice Cream Co., 133 N.J. Super. 333 (App. Div. 1975). See also, Bowler v. Fidelity & Cas. Co. of N.Y., 53 N.J. 313 (1969).
It is also urged that plaintiff is barred by failure to file a proof of loss. The policy requires an insured to give immediate written notice of the loss to the company and within 60 days submit a signed and sworn proof of loss, unless that time period is extended in writing by the insurer. Here, plaintiff reported the loss to defendant's agent by letter dated November 26, 1974, and enclosed a list of all items stolen and the value of each. As indicated, there was correspondence and at least one telephone call between the parties extending over the next nine months, culminating in the submission by another agent of a "sworn statement in proof of loss" form which plaintiff found to be inaccurate and unacceptable, as stated in his response of September 3, 1975. In these circumstances there was substantial compliance with the policy requirement, as defendant was promptly and fully informed of all details of the loss. Defendant did not show it was prejudiced by the technical breach of the policy provision and accordingly failed to carry its burden as to the defense. Cooper v. Government Employees Ins. Co., 51 N.J. 86 (1968); Bowler v. Fidelity & Cas. Co. of N.Y., supra.
Judgment will therefore be entered in favor of plaintiff against defendant in the sum of $1032.89 plus costs.
NOTES
[1] By separate endorsement, coverage was provided for loss due to theft away from the premises while "such property" was unattended in any motor vehicle.
[2] These items include four screwdrivers, two Phillip's screwdrivers, one automatic screwdriver with bits, hacksaw blades, a key hole saw and a caulking gun. The total value of these items, including tax, is $43.87.