199 N.J. Super. 254 (1985)
489 A.2d 175
THOMAS GARCIA, PLAINTIFF-APPELLANT,
v.
CLIFFORD W. SNEDEKER, DIRECTOR OF THE DIVISION OF MOTOR VEHICLES, AND THE UNSATISFIED CLAIM AND JUDGMENT FUND BOARD, AND UNDERWRITERS ADJUSTING COMPANY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted January 22, 1985.
Decided February 25, 1985.
*256 Before Judges MICHELS, PETRELLA and BAIME.
Daidone & Engrissei, attorneys for appellant (Lawrence P. Engrissei, on the brief).
Pennington & Thompson, attorneys for respondents (William J. Bryers, on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
This appeal presents difficult questions pertaining to whether the limitations period imposed by N.J.S.A. 39:6A-13.1(a) under the New Jersey Automobile Reparation Reform Act (the No Fault Law), N.J.S.A. 39:6A-1 et seq., is applicable in a suit instituted against the Unsatisfied Claim and Judgment Fund to recover personal injury protection (PIP) benefits. We hold that such actions must be brought within the time periods *257 mandated by N.J.S.A. 39:6A-13.1(a).[1] Since plaintiff's complaint was filed beyond the appropriate limitations period, we would ordinarily affirm the trial judge's order granting defendants' motion for summary judgment. However, the record presents substantial questions with respect to whether defendants should be equitably estopped from claiming the benefit of the statute of limitations. These questions were not directly raised by plaintiff and hence were not addressed by the trial judge. We are, thus, constrained to remand the matter to insure full exploration of the factual issues presented.
The sparse record discloses the following facts. On December 5, 1980, plaintiff sustained serious injuries as a result of an automobile accident. At the time of the accident, plaintiff was a passenger in an automobile owned by Garcia Fernando and operated by Celedonia Sepleveda. Neither plaintiff, Fernando nor Sepleveda was insured. On January 19, 1981, plaintiff filed a notice of intention to submit a claim with the Fund pursuant to N.J.S.A. 39:6-65 and N.J.S.A. 39:6-86.5. The Fund acknowledged receipt of plaintiff's notice and in a letter dated March 13, 1981, stated that it would subsequently determine whether he was an eligible claimant. On April 7, 1981, plaintiff's attorney wrote to the Fund requesting that it "expedite assigning a file number" to the case to insure that medical care would continue. Several weeks later, the Fund provided plaintiff with *258 various information forms with the direction that they be completed within 20 days. The accompanying letter, dated May 1, 1981, stated that once the completed forms were received the Fund would "register" plaintiff's claim and "in all probability ... process it." Pursuant to the Fund's request, the forms were timely mailed along with various medical bills. In the following months, plaintiff's attorney continued to send medical bills to the Fund. On August 17, 1981, Underwriters Adjusting Company, which had been assigned to handle the matter, advised plaintiff's attorney by letter that it had received the medical bills and requested various physicians' reports. In the letter, the carrier noted that "the liability aspect of [plaintiff's] claim was currently under investigation" and that he would be "advised accordingly at the conclusion" of its review. Despite this representation, the Fund never rendered a decision with respect to the efficacy of plaintiff's claim. On March 25, 1983, plaintiff filed a complaint against the Fund and the Director of the Division of Motor Vehicles. In the complaint, plaintiff sought an order declaring the Fund responsible for all medical bills and lost wages arising out of the accident. On September 19, 1983, plaintiff instituted a declaratory judgment action against Underwriters Adjusting Company and the Fund. The actions were subsequently consolidated. Defendants' motions for summary judgment were thereafter granted upon the basis that the limitations period set forth in N.J.S.A. 39:6A-13.1(a) had expired. This appeal followed.

I
We note at the outset that the Unsatisfied Claim and Judgment Fund Law, N.J.S.A. 39:6-61 et seq., is totally silent with respect to restrictions upon the time within which a claim must be prosecuted. See Corrigan v. Gassert, 27 N.J. 227, 235 (1958). Nevertheless, we are entirely satisfied that the provisions of the Fund Law governing recovery of PIP benefits fully incorporate the limitations period mandated by N.J.S.A. 39:6A-13.1(a). *259 N.J.S.A. 39:6-86.1 presently reads in pertinent part as follows:
When any person qualified to receive payments under the provisions of the `Unsatisfied Claim and Judgment Fund Law,' suffers bodily injury or death through being struck, as a pedestrian, as defined in section 2 of P.L. 1972, c. 70 (C.39:6A-2), by a motor vehicle, including an automobile as defined in section 2 of P.L. 1972, c. 70 (C.39:6A-2), and a motorcycle, or by an object propelled therefrom, or arising out of an accident while occupying, entering into, alighting from, or using an automobile, registered or principally garaged in this State for which personal injury protection benefits under the `New Jersey Automobile Reparation Reform Act,' P.L. 1972, c. 70 (C.39:6A-1 et seq.), or section 19 of this 1983 amendatory and supplementary act, would be payable to such person if personal injury protection coverage were in force and the damages resulting from such accident or death are not satisfied due to the personal injury protection coverage not being in effect with respect to such accident, then in such event the Unsatisfied Claim and Judgment Fund shall provide, under the following conditions, the following benefits....[2] (emphasis added).
In our view, the underscored statutory language evidences a clear legislative design to compel a claimant to prosecute his claim within the time period set forth in N.J.S.A. 39:6A-13.1(a). Cf. Pearman v. Unsatisfied Claim & Judg. Fd. Bd., 185 N.J. Super. 397, 401 (Law Div. 1982). In order to recover from the Fund, it is incumbent upon the claimant to establish that PIP benefits would be "payable" were such coverage in force. We are convinced that the Legislature, thus, intended to compel a claimant to comply with the time restrictions *260 set forth in the No Fault Law. The statutes are to be read in pari materia. See Fidelity Union Trust Co. v. N.J. Highway Auth., 85 N.J. 277, 292 (1981), app. dism. 454 U.S. 804, 102 S.Ct. 76, 70 L.Ed.2d 73 (1981); Pascucci v. Vagott, 71 N.J. 40, 51 (1976); State v. Green, 62 N.J. 547, 554-555 (1973). A contrary construction would lead to the anomalous result that those seeking to recover benefits from the Fund would have greater rights than claimants proceeding on an insurance policy. Cf. Montedero v. Asbury Park, 174 N.J. Super. 305, 308 (App.Div. 1980).
As we perceive it, the legislative objective was to protect the public from losses sustained and injuries inflicted by uninsured, financially irresponsible motorists. See, e.g., Gorton v. Reliance Ins. Co., 77 N.J. 563, 572 (1978); Douglas v. Harris, 35 N.J. 270, 279 (1961); Giacobbe v. Gassert, 29 N.J. 421, 425 (1959); Giles v. Gassert, 23 N.J. 22, 34 (1956). That purpose would not be materially advanced were we to accord claimants of the Fund greater protection than that normally provided under the No Fault Law. Simply stated, we can discern no legislative design to provide claimants with blanket immunity from the time restrictions set forth in N.J.S.A. 39:6A-13.1(a).
Plaintiff contends that the Unsatisfied Claim and Judgment Fund Law is a measure of social legislation and, thus, should be construed liberally. He argues that the right to recover PIP benefits from the Fund constitutes a statutory entitlement and, hence, no limitations period is legislatively prescribed. We disagree. The result we reach is compelled by the plain meaning of the language set forth in N.J.S.A. 39:6-86.1. Contrary to plaintiff's argument, sound public policy considerations also strongly militate in favor of our conclusion. Perhaps it bears repeating that a statute of limitations has several salutary purposes. "The most important of these purposes recognizes that eventual repose creates desirable security and stability in human affairs." Galligan v. Westfield Centre Service, Inc., 82 N.J. 188, 191-192 (1980). See also Tevis v. *261 Tevis, 79 N.J. 422, 430 (1979); Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111, 115 (1973); State v. United States Steel Corp., 22 N.J. 341, 358 (1956). Time restrictions "penalize dilatoriness." Ochs v. Federal Ins. Co., supra 90 N.J. at 112 (1982). By penalizing unreasonable delay, "such statutes induce litigants to pursue their claims diligently so that answering parties will have a fair opportunity to defend." Galligan v. Westfield Centre Service, Inc., supra 82 N.J. at 192. See also Union City Housing Auth. v. Commonwealth Trust Co., 25 N.J. 330, 335 (1957). So too, statutes of limitations "spare the courts from litigation of stale claims." State v. Standard Oil Co., 5 N.J. 281, 295 (1950) (quoting Chase Security Corp. v. Donaldson, 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628, 1635 (1945)), aff'd sub nom. Standard Oil Co. v. New Jersey, 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078 (1951). "Once memories fade, witnesses become unavailable, and evidence is lost, courts no longer possess the capacity to distinguish valid claims from those which are frivolous and vexatious." Galligan v. Westfield Centre Service, Inc., supra 82 N.J. at 192. As "guardian[s] of the trust monies represented by our statutory Fund," see Szczesny v. Vasquez, 71 N.J. Super. 347, 358 (App.Div. 1962), we are obliged to construe the act in a common sense fashion consonant with the purpose of precluding fraud and abuse and promoting "fulfillment of the essential legislative policy." Giacobbe v. Gassert, supra, 29 N.J. at 425. We are convinced that our construction of N.J.S.A. 39:6-86.1 fully comports with that objective.
We also reject plaintiff's alternative argument that the right to recover PIP benefits from the Fund is grounded upon the theory of quasi-contract and, thus, the six-year statute of limitations mandated by N.J.S.A. 2A:14-1 is controlling. We recognize that the limitations period applicable to contracts generally governs actions to recover insurance proceeds. See, e.g., Selected Risks Ins. Co. v. Dierolf, 138 N.J. Super. 287, 294 (Ch.Div. 1975); Kielb v. Couch, 149 N.J. Super. 522, 526 (Law Div. 1977); Breen v. N.J. Mfgrs. Indemn. Ins. Co., 105 N.J. Super. *262 302, 309 (Law Div. 1969), aff'd 109 N.J. Super. 473 (App. Div. 1970). See also Ochs v. Federal Ins. Co., supra 90 N.J. at 113 n. 2. But see Iavacoli, No Fault and Comparative Negligence in New Jersey, pp. 75-80 (1973). This much conceded, the statutory scheme was not intended to serve as a substitute for an insurance policy. Cf. Cheatham v. Unsatisfied Claim & Judg. Bd., 178 N.J. Super. 437, 442 (App.Div. 1981); Lindsay v. Boles, 61 N.J. Super. 516, 518-519 (Cty.Ct. 1960). Nor was the Fund designed to perform the functions of an insurance carrier. Rather, the legislative effort was to "forestall the possible hardship attendant upon a claimant's absorption of the entire economic loss occasioned by the accident." Holmberg v. Aten, 68 N.J. Super. 73, 79 (App.Div. 1961). See also Dixon v. Bowden, 117 N.J. Super. 596, 600-601 (Law Div. 1971). We, thus, perceive no actual or theoretical support for plaintiff's contention.[3] We hold that the time restrictions set forth in N.J.S.A. 39:6A-13.1(a) govern in actions instituted against the Fund to recover PIP benefits.

II
As noted previously, the record presents difficult questions with respect to whether defendants should be equitably estopped from asserting the statute of limitations. In New Jersey, we have a "long history of instances where equity has interposed to bar the statute of limitations ... where some conduct on the part of the defendant ... has rendered it inequitable that he be allowed to avail himself of this defense." Lopez v. Swyer, 62 N.J. 267, 275 n. 2 (1973). The principle is bottomed on equitable considerations and, hence, the exact contours of the doctrine defy rigid definition. Suffice it to say, the rule has been applied in a plethora of factual patterns. See, *263 e.g., Griggs v. Bertram, 88 N.J. 347, 355-364 (1982); Warren v. The Employers' Fire Ins. Co., 53 N.J. 308, 311-312 (1969); Kyle v. Green Acres at Verona, Inc., 44 N.J. 100, 111 (1965); Merchants Indemnity Corp. v. Eggleston, 37 N.J. 114, 127-129 (1962); Friedman v. Friendly Ice Cream Co., 133 N.J. Super. 333, 337-338 (App.Div. 1975); Fredericks v. Farmers Rel. Ins. Co. of N.J., 80 N.J. Super. 599, 602 (App.Div. 1963); White v. Austin, 172 N.J. Super. 451, 455 (Cty.D.Ct. 1980); Tell v. Cambridge Mut. Fire Ins. Co., 150 N.J. Super. 246, 253-254 (Cty.D. Ct. 1977). See also Tevis v. Tevis, supra 79 N.J. at 438-439 (Pashman, J., dissenting); Howard v. West Jersey, etc., R.R. Co., 102 N.J. Eq. 517, 520 (Ch. 1928), aff'd o.b. 104 N.J. Eq. 201 (E & A 1929). But see Lawrence v. Bauer Publishing & Printing Ltd., 78 N.J. 371, 376-377 (1979) (Pashman, J., concurring). Cf. Galligan v. Westfield Centre Service, Inc., supra 82 N.J. at 191-193; Kaczmarek v. New Jersey Turnpike Auth., 77 N.J. 329, 337-338 (1978); White v. Violent Crimes Compensation Board, 76 N.J. 368, 387 (1978); Peloso v. Hartford Fire Ins. Co., 56 N.J. 514, 521 (1970); Fernandi v. Strully, 35 N.J. 434, 439-451 (1961).
Recently, our Supreme Court had occasion to apply the doctrine in a somewhat related context. In Griggs v. Bertram, supra, an insurer failed for an unreasonable period of time to inform its insured of the possibility of a disclaimer of coverage, notwithstanding its early notification of a claim. The Court noted that "[u]pon the receipt from its insured of a claim or notification of an incident that may give rise to a claim, an insurer is entitled to a reasonable period of time in which to investigate whether the particular incident involves a risk covered by the terms of the policy." Id. 88 N.J. at 357. However, once the insurer has had a reasonable opportunity to investigate, or has learned of grounds questioning coverage, "it is then under a duty promptly to inform its insured of its intention to disclaim coverage or of the possibility that coverage will be denied or questioned". Id. at 357. Unconscionable delay in disclaiming coverage, or in giving notice of the possibility of *264 such disclaimer "can estop an insurer from later repudiating responsibility under the insurance policy." Ibid.
We do not suggest that the Court's holding in Griggs v. Bertram, supra, is to be applied uncritically to claims submitted to the Fund. Clearly, insurance policies are contracts of the utmost good faith, and, thus, place special burdens upon the insurer. See, e.g., Bowler v. Fidelity & Cas. Co. of N.Y., 53 N.J. 313, 327 (1969). See also Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 492 (1974). So too, we are not unmindful of the general reluctance to apply the estoppel doctrine against a governmental agency. See, e.g., Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493, 503 (1955). See also Skulski v. Nolan, 68 N.J. 179, 198 (1975); Vogt v. Borough of Belmar, 14 N.J. 195, 205 (1954); In re Allstate Ins. Co., 179 N.J. Super. 581, 593 (App.Div. 1981); Boyd v. Dep't of Inst. and Agencies, 126 N.J. Super. 273, 275 (App.Div. 1974), certif. den. 65 N.J. 281 (1974). Nevertheless, estoppel may be invoked against public bodies to prevent "manifest wrong and injustice" and where it would not "hinder or prejudice essential governmental functions." Vogt v. Borough of Belmar, supra 14 N.J. at 205. See also Anske v. Palisades Park, 139 N.J. Super. 342, 348 (App.Div. 1976).
Here, we perceive nothing unjust in compelling the Fund to act consistently with its public mandate. Hence, application of the doctrine of estoppel would not seriously impair performance of its public function.[4] Unfortunately, the meager record is generally uninformative with respect to whether defendants led plaintiff reasonably to believe that no questions would be raised concerning the Fund's responsibility for payment of the claim. Under these circumstances, we are constrained to remand the matter to the trial judge to insure full exploration of that issue. *265 Should the court ultimately conclude that defendants are not equitably estopped from claiming the benefit of the statute of limitations, the order granting summary judgment will stand. Conversely, should the trial judge find that defendant's conduct was such as to compel application of the doctrine of equitable estoppel, the trial will then proceed with respect to the merits of plaintiff's claim. Accordingly, the matter is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] N.J.S.A. 39:6A-13.1(a) provides in pertinent part as follows:

Every action for the payment of benefits set forth in sections 4 and 10 of this act, except an action by a decedent's estate, shall be commenced not later than 2 years after the injured person or survivor suffers a loss or incurs an expense and either knows or in the exercise of reasonable diligence should know that the loss or expense was caused by the accident, or not later than 4 years after the accident whichever is earlier, provided, however, that if benefits have been paid before then an action for further benefits may be commenced not later than 2 years after the last payment of benefits.
In Ochs v. Federal Ins. Co., 90 N.J. 108 (1982) our Supreme Court held that the two-year period begins to run from either the date of the accident or from the date on which the insured became aware that his injuries were related to the accident. Cf. Zupo v. CNA Ins. Co., 98 N.J. 30 (1984).
[2] The present statute became effective on October 4, 1983. At the time of the accident, the statute read as follows:

When any person qualified to receive payments under the provisions of the `Unsatisfied Claim and Judgment Fund Law,' suffers bodily injury or death arising out of the ownership, maintenance, operation or use of an automobile, as defined in P.L. 1972, c. 70 registered or principally garaged in this State for which personal injury protection benefits under the `New Jersey Automobile Reparation Reform Act,' would be payable to such person if personal injury protection coverage were in force and the damages resulting from such automobile accident or death are not satisfied due to the personal injury protection coverage not being in effect with respect to such automobile accident, then in such event the Unsatisfied Claim and Judgment Fund shall provide, under the following conditions, the following benefits.... (emphasis added).
[3] We note further that an action to recover PIP benefits is not considered contractual for the purpose of the right to a jury trial. See Manetti v. Prudential Property & Cas. Ins. Co., 196 N.J. Super. 317, 320-321 (App.Div. 1984). See also Quinchia v. Waddington, 166 N.J. Super. 247, 249 (Law Div. 1979).
[4] Questions pertaining to applicability of the doctrine of estoppel to the Fund were raised but not decided in Beltran v. Doe, 145 N.J. Super. 152, 156-157 (Law Div. 1976), aff'd sub nom. Beltran v. Waddington, 155 N.J. Super. 264 (App.Div. 1978).